UNITED STATES DISTRICT COURT

**FILED**

FOR THE DISTRICT OF COLUMBIA

FEB 1 3 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

HARRY EDWIN MILES, et al          #17768-112
*VICTORVILLE MEDIUM, F.C.I.*
*VICTORVILLE, F.C.I.*
    Plaintiffs/Petitioners          c
*POB 5300*
*ADELANTO, CA. 92301*

v.          c          CASE NO. _____

UNITED STATES DEPARTMENT          c

OF JUSTICE,          c          Case: 1:12-cv-00257
                                 Assigned To : Leon, Richard J.
ERIC HOLDER, IN HIS OFFICIAL          c          Assign. Date : 2/13/2012
                                                 Description: Pro Se Gen. Civil
CAPACITY, OR OFFICE HOLDER,          c

FEDERAL BUREAU OF PRISONS,          c

HARLEY LAPPIN, DIRECTOR          c

OR CURRENT OFFFICE HOLDER,          c

UNITED STATES OF AMERICA,          c          © 2012

    Defendants/Respondents          c          Verified

_____          c

## CLASS ACTION LAWSUIT

    This is a lawsuit challenging the jurisdiction of the federal government for

the unconstitutional enactment of Public Law 80-772, Title 18 of the Criminal Code,

80th Congress, 1947/1948, which was allegedly passed by the House of

Representatives on May 12, 1947, when in fact *no quorum* was present to pass the

alleged bill, the House of Representatives issued a vote of 38 to 6, and all actions

after the quorum violation were illegal.  The bill was then allegedly signed by the

President pro tempore of the Senate and Speaker of the House on June 22 and 23,



RECEIVED
Mail Room

FEB 1 3 2012

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

1948, when Congress had fully and completely adjourned *sine die* on June 20, 1948 at 7 AM, and *no quorum* was present to witness the signature of the bill. This unconstitutional bill was signed into law by President Truman on June 25, 1948. Both acts, on May 12, 1947 and on June 23, 1948 are in violation of the Quorum Clause of the Constitution, Article I, Section 5, Clause 1, as well as Article I, Section 7 of the Constitution. The enactment includes 18 USC section 3231, which is the <u>only</u> <u>statute</u> that allows a federal court jurisdiction to prosecute or convict a federal defendant in a criminal offense. The statute is unconstitutional as a matter of law since it violates <u>twice</u> the Quorum Clause of the Constitution, Article I, Section 5, Clause 1. Case closed. Win for Petitioner.

The court can not obtain jurisdiction from a previous statute because the 1940 enactment was repealed in 1948. The court cannot obtain jurisdiction under the 1909 statute because such a ruling would be a violation of the Fair Warning Doctrine. Case closed. Win for Petitioner.

The court cannot obtain jurisdiction under the Enrolled Bill Rule, *Field v. Clark*, 143 U.S. 649 (1892), because that ruling is invalid by its own terms, "in open session". Further, the ruling was distinguished by *United States v. Munoz-Flores*, 495 U.S. 385 (1990), FN 4, which declared that the Enrolled Bill Rule only applied to non-Constitutional violations.   Case closed. Win for Petitioner.

The court cannot obtain jurisdiction because a criminal statute was passed after 1948, since in order to obtain jurisdiction, the court must first have a statute that authorizes jurisdiction. The only statute authorizing jurisdiction is 18 USC

section 3231, part of the passage of Public Law 80-772 in 1948.  Since the alleged passage of Public Law 80-772 is invalid as a matter of law, then under *the in toto* provision regarding passage of legislation, 18 USC section 3231 is unconstitutional. Therefore, without a statute authorizing jurisdiction of the court, any passage of legislation after that time is unconstitutional.  Lower federal courts are courts of limited jurisdiction and are empowered to hear only those cases authorized by federal statute, the US Constitution, or a US treaty.  *Kokkonen v. Guardian Life Ins. Co.*, 511 US 375, 377 (1994). Subject matter jurisdiction can not be waived or conferred by agreement of the parties.  *Simon v. Wal-Mart Stores*, 193 F.3d 848, 850 (5th Cir. 1999); *Laughlin v. Kmart Corp.*, 50 F3d 871, 873 (10th Cir. 1995).  Case closed.  Win for the Petitioner.

The further question is whether the court is a jurisdictional court as required by the Constitution.  Assuming the court is a court required to uphold the Constitution, then the court has no other authority to do anything but declare the statute unconstitutional and *void ab initio*.  Case closed, Win for Petitioner.

This lawsuit is brought pursuant to FRCP 23.  Class members are identified in Appendix A and consist of 3 categories:  Those currently pretrial or threatened with trial; those currently imprisoned after trial or plea; and those having been convicted and are now out of federal custody.

## PARTIES

Main Plaintiff is Harry Edwin Miles, who is currently imprisoned at Victorville Medium FCI. He can be served at Harry Edwin Miles, Reg. No. 17768-112, P.O. Box 5300, Adelanto, CA 92301. Miles has exhausted all administrative and court remedies available to him. Miles filed a section 2241 petition in the district court where Miles was incarcerated, Los Angeles, and even though Miles sought extraordinary relief, the district court held the petition for over one year, refusing to answer it. Miles then filed a Writ of Mandamus with the Ninth Circuit, and even though his challenge was to the jurisdiction of the court, See *Carol Ann Bond v. United States,* 09-1227. S.Ct. 6/16/11, 9-0 vote (any statute repugnant to the Constitution is *void ab initio*), the Ninth Circuit claimed that his challenge did not meet the standards of mandamus. Miles then filed a habeas petition directly into the Supreme Court, requesting that Court to intervene. Once the Supreme Court petition was filed, the district court then did a general denial of Miles claim, and held the ruling without notice so Miles would not have time to file a motion for reconsideration. Miles filed his habeas petition in the Supreme Court, and when Miles announced to the Supreme Court that Miles had arranged a noted dean of a law school to represent Miles, someone who had been to the Supreme Court 4 times, the Supreme Court decided not to hear the petition. Miles also exhausted his administrative remedies with the Department of Justice when Miles sent a request for a certified question of law to the Attorney General, Eric Holder, waited 30 days, without response, and then sent two additional requests for an answer, without

4

reply.  Therefore, Miles, the lead petitioner, has exhausted all administrative and court remedies and is entitled to lead this class action.

Class participants are listed in Appendix A attached hereto and incorporated herein, by reference.  The illegal charge and/or imprisonment of Citizens of the United States and other countries constitutes <u>Human Rights Violations</u> and acts of <u>Peonage and Slavery</u>. The other parties are similarly situated plaintiffs as they were illegally charged and/or incarcerated by the United States Department of Justice and/or the Bureau of Prisons and/or the UNITED STATES OF AMERICA. Plaintiffs were charged without a valid statute, and each *court knew or should have known* that the charge and/or conviction was unconstitutional. The agencies of the government listed in the lawsuit as defendants *knew or should have known* that their acts are illegal, because the statute the agencies used is unconstitutional.  See 18 USC section 4001(a).

Defendant, Department of Justice ("DOJ") is an agency of the United States government, and can be served at 1425 New York Avenue, N.W., Washington, DC 2005.  Phone No. (202) 654-6679.  DOJ has charged and convicted over 100,000 people since 1948 under a statute should have known to be invalid.

Defendant Eric Holder, or current office holder, is charged in his official capacity as Attorney General of the United States.  Holder, or current office holder, has taken a pledge to uphold the Constitution of the United States and is the chief legal officer of the country.  Holder is knowingly imprisoning people without right.

Defendant Bureau of Prisons ("BOP") claims to be an agency of the United States government and can be served at their headquarters at 320 First Street, N.W. Washington DC 20534.  BOP allegedly investigated the quorum issue in 2009 through its attorneys and determined that the statute used to confine people is invalid, yet continues to collect money from Congress, while receiving a budget of about $7 Billion per year from Congress.

Defendant Harley Lappin , the former director of the Federal Bureau of Prisons, allegedly sent out an internal memorandum to his staff in June of 2009, in which he admitted that his legal staff had determined that Public Law 80-772 had never passed Congress because of Quorum violations.  Lappin was allegedly forced to resign by the BOP after the memorandum was released, under suspicious circumstances. The person who leaked the memorandum is believed to have met with foul play in 2009.  Lappin's address and all other information related to the actions will obtained through discovery. Alternatively, the current director of the BOP will be served in his official capacity.  Defendant, or current office holder, is charged in his official capacity.  The BOP receives about $7 Billion a year from Congress and is responsible for the oversight of those funds in a Constitutional manner.

Defendant UNITED STATES OF AMERICA and/or its corporate entity by and through its registered agent(s), is believed to be registered to do business through the State of New Jersey as a private corporation.  Prosecutions in Federal Courts are written in the name of the UNITED STATES OF AMERICA.  However,

if it is proven that the **UNITED STATES OF AMERICA** is a corporate entity, and not a government, then all prosecutions conducted by that entity would be *void,* since a corporation has no authority to prosecute. That standing or lack of standing will be determined through discovery. The correct registered agent will be obtained through investigation. Currently it is being served through the Office of the President at 1600 Pennsylvania Avenue, NW, Washington, DC 20500.

### A.   <u>STATUTES IMPOSED</u>

**FRCP 23; Class meets all prerequisites of FRCP 23(a) and (b). Plaintiffs request a certification order from the court according to FRCP 23(c).**

**SUA Sponte of the court to address its own jurisdiction**

28 U.S.C. 2241 et seq HABEAS CORPUS

F.R.Civ.P 60(b)(4) "JUDGMENT IS VOID" MOTION.

The original habeas corpus as presented in the Constitution.

RULE 23 CLASS ACTION; MOTION FOR APPROVAL OF CLASS

28 U.S.C. 454 and 455 CONFLICT OF INTEREST AND BIAS OF JUDGES

### B.   <u>INDEX AND TABLE OF CONTENTS</u>

Caption: Habeas Petition . . . . . . .
Index to Habeas Petition . . . . . . .
Index to Habeas 'Memorandum of Law and Fact' . . . .
Petitioner can act by § 2241 and 60 (b) (4) . . . . .
Docket Fee $5.
Notification to Judges of Jurisdictional Defects . . . .
The Petition and Notification . . . . . . .
Court Must Notice Error At Any Time: F.R.Crim.P. 12 (b) 8 . .
Motion to Appoint Counsel: Rule 44 (a) , 18 U.S.C. 3006A . . .
Facts Not Discoverable with "Due Diligence" . . . . .

Do Not Mistake This Argument for Others . . . . . .
100,000 Lawyers Couldn't Find This Error . . . . .
Conclusion . . . . . . . . .
Signature . . . . . . . . . . .

## C.    HABEAS MEMORANDUM INDEX

Caption: Habeas Memorandum of Law and Fact . . . .
Index to Habeas 'MEMORANDUM OF LAW AND FACT' . . .
Claim: 1948-Recodifled Title 18, § 3231 Are Invalid . . . .
Effect of Lack of Passage . . . . . . .
Similar Argument Invalid . . . . . . . .
Individual Criminal Statutes Not Recodified . . . . .
Longevity Ineffective to Pass Bill . . . . . .
Judicial Notice . . . . . . . . .
Court is Obligated to Accept, Adjudicate This Case . . . .
Court is Obligated to Investigate its Jurisdiction . . . .
Court Must Cognize and Correct This Error . . . .
Marshall Field v. Clark Does Not Control This Case . . . .
Clinton v. NYC, Munoz-Flores Overturns Marshall Field . . .
Marshall Field Overturned, Dicta Not Relevant Here . . .
Clinton v. NYC Applies, Not Marshall Field . . . . .
Marshall Field Did Not Control This Case 1948-1989 . . .
Conviction Based on Invalid Statute is Void . . . . .
Void Judgment Is a Legal Nullity . . . . . .
No Time Limit on an Attack on a Void Judgment . . . . .
Court: No Discretion to Fail to Vacate Void Judgment
Signatures . . . . . . . . .

## PLEADING

**COMES NOW Lead Plaintiff, along with similarly situated plaintiffs, Appendix**

**A, unrepresented**.  Lead Plaintiff is a person detained by the Bureau of Prisons. (see

'judgment is void Appeal, and memorandum of law to support that motion) illegally. See

also *U.S. v. Morgan*, 346 US 502, 520, 98 L.Ed. 248, 261 (1954),  moving the court to

dismiss the judgments and convictions of Plaintiffs  and of every person who has been

charged and convicted since 1948 pursuant to 18 USC section 3231, who is on the

petition. Plaintiff also and/or alternatively  files a 28 U.S.C. 2241 habeas action (**the only**

**extraordinary writ for habeas corpus**) since the original district court in Los Angeles refused to address its own jurisdiction and waived its right to be a court of **original jurisdiction by its actions**, since the Department of Justice, Bureau of Prisons, and the UNITED STATES OF AMERICA,  is knowingly acting without jurisdiction, and/or alternatively a writ of habeas corpus as authorized by the **original habeas corpus,** by the Constitution, and/or alternatively a 28 USC section 2255 motion, citing newly discovered evidence and fraud, and/or alternatively  a FRCP 60(b) motion, including  'Class Action' features. See F.R.Civ.P. 23.

### D. PETITIONER CAN ACT BY  28 U.S.C. § 2241 AND/OR THE ORIGINAL WRIT OF HABEAS CORPUS AND OR FRCP 60(b)(4) AND/OR 28 USC SECTION 2255

According to 28 U.S.C. § 2242, the habeas petition must be signed by the detainee or a person acting on his behalf. Petitioner's signature is attached infra. According to 28 U.S.C. § 2243, the judge must either **immediately** Grant the writ or "forthwith" order the Respondent to file an Answer within three (3) days, or a maximum of 20 days "for good cause." Plaintiff's attempts at filing a habeas action in his district have been repeatedly ignored, blocked, disrupted, or side-lined. Plaintiff, and class petitioners are entitled to a DEFAULT under Rule 55(b) and based on the lack of valid response, Plaintiff moves the clerk of the court to issue a default on behalf of Plaintiff within the next 10 days.

### E. THIS FILING NOTIFIES ALL DISTRICT COURT JUDGES AND APPELLATE COURT JUDGES OF JURISDICTIONAL DEFECTS IN ALL PENDING AND PAST CRIMINAL CASES

In addition to the obligation placed on the judges who consider this petition at the

moment of the arrival of this petition/notification to this court, EACH judge in any

judicial district, both district and appellate, has become constructively aware of the defect

to his/her criminal jurisdiction in each pending and each past criminal case, and aware of

the defective criminal jurisdiction in each case of each prisoner originating in or currently

located in any judicial court district.

Merely as a product of the arrival of this filing at this court, each judge became

constructively aware of their obligation to, **sua sponte**, raise a challenge in each pending

and past criminal case and allow the defendant(s) and/or his/her attorney to research,

brief, and argue the matter. See, *Steel Co. v. Citizens For a Better Env.*, 523 US 83, 94,

101, 140 L.Ed.2d 210 (1998).

   Thus, the judges are obligated to raise in the criminal/civil case *sua sponte* (**on the**

**judge's own motion**) Federal Rule of Civil Procedure 60(b)(4) ("judgment is void")

motion, and/or a 28 U.S.C. § 2241 habeas corpus action. Because a 60(b) motion is the

continuation of a criminal case, and is not the initiation of a new case under a new (civil)

docket, see *U.S. v. Morgan,* 346 US 502, 520, 98 L.Ed. 248, 261 (1954), each prisoner

and ex-prisoner is entitled to the appointment of legal counsel under 18 U.S.C §

3006A(c). ("at all stages of a criminal case").

### F. ALL JUDGES, INCLUDING APPELLATE JUDGES IN THIS DISTRICT MAY BE CONFLICTED UNDER 28    U.S.C. SECTIONS 454 AND 455

The court is presumed to know the law or where to find it.  According to *Steel Co. v.*

*Citizens for a Better Env.* (523 US 83, 94, 101, 140 L.Ed.2d 210 (1998), a judge who is

aware of a jurisdictional challenge to his authority is obliged to ***raise sua sponte*** (on his

own motion) that challenge, even if no litigant raises the challenge or all litigants are prepared to concede the court's jurisdiction. **This means that each judge in this court was obliged to inform each current or past criminal defendant and his attorney, and appoint him an attorney if he has none, and give the litigants an opportunity to research and argue the judge's lack of criminal jurisdiction.**

To Petitioner's knowledge and belief, this has not happened for any judge at all, let alone every judge. **So, an un-conflicted judge or judges must be appointed to hear this case**. If a non-conflicted judge can not be found, then the issue must be presented to Congress for clarification.

Petitioner, thereby, invoking the rights provided to Petitioner by the Constitution of the United States, requests the appointment of an **un-conflicted judge**. Petitioner doubts that a judge can be found that has not illegally sentenced a person. It is not possible to use the "Rule of Necessity", *U.S. v. Will*, 449 US 200 (1980) for an existing conflicted judge to hear the case, for two reasons: First, because a different federal judge may always be appointed to hear a case, whether from a different district, or a different appellate circuit. Second, because the only way to apply the 'Rule of Necessity' is to first determine if each possible candidate/judge is conflicted. To do that, it is necessary to identify one judge, determine if **he/she were obliged to raise the issue of their lack of general criminal jurisdiction, yet did not do so**. But to do that, even for the judge considered, it is first necessary to determine that they were obliged to raise the issue: **Since the answer is clearly 'Yes', this completes the judgment of the issue at hand. Furthermore, any judge who did not sua sponte raise the issue, since the court is presumed to know the**

**law or where to find it, has violated his/her oath of office to uphold the Constitution of the United States.**

Furthermore, in attempting to maneuver the proceedings in this case for the government, the judge is **practicing law from the bench**, a high misdemeanor according to 28 USC section 454, a violation of 28 USC section 455, and **therefore, due to the crimes already committed in this case, *the judgment is void as a matter of law* as the commitment of a felony by the judge and/or the prosecutor *voids all proceedings*.**

### G.     CLASS ACTION JURISDICTION RULE 23

This is a class-action complaint under Rule 23 of the Federal Rule of Civil Procedure. The classes are so numerous (thousands of affected detainees, defendants, prisoners and ex-prisoners) that joinder of all members is impractical. There are questions of law and/or facts common to the class, and the claims or defenses of the representative parties are typical of the claims or defenses of the class.  This case only deals with the parties attached to the case, as are listed in Appendix A.

Also, the parties opposing the class have acted or refused to act on grounds generally applicable to the class, thereby making appropriate **final injunctive relief or corresponding declaratory relief with respect to the class as a whole**. The questions of law or fact common to the members of the class predominate over any questions affecting individual members, and a class action is superior to other available methods (if any exist) for the fair and efficient adjudication of the controversy.

The fundamental claim is that despite any other fact regarding the details of any given petitioner, he/she was or is being charged and/or convicted with a violation of Federal

Criminal Law, when the **court into which he/she was taken did not have any such criminal jurisdiction**. The other details regarding any given petitioner **are irrelevant** to the proper disposition of this case: The nature of the crime alleged, the locus of the crime alleged, the petitioner's prior criminal record, or any other factor **is irrelevant**. This situation is precisely the kind amenable for use of the Class Action vehicle.

Petitioner may be one 'representative party'. By this, Petitioner cautions that he/she does not mean that he/she intends to act as legal representative (i.e. an attorney) for the others: One ruse committed by courts in years past was to improperly conflate the term 'representative party' with 'legal representative'. In fact, those terms mean distinctly different things, and all judges should know this since they are presumed to know the law or where to find it. Petitioner's situation is 'representative' of one class of petitioner. It may be desirable to also identify and name other kinds of 'representative parties'. Persons detained for a crime; persons charged with a crime; persons convicted for a crime; persons currently in prison for a crime, persons previously convicted of a crime and now released, etc. However, since the relief demanded (complete release, with complete expungement of a criminal record and a declaration of actual innocence for each plaintiff), is identical for all such petitioners, appointment of other representatives should be unnecessary.

Further, F.R.Civ.P. 23(g) specifically **REQUIRES** that a judge hearing this case appoint an attorney ('legal representation') for the class. Thus, there can be no argument that the class, once approved, will not have adequate legal representation.

### H.  THE PETITION/NOTIFICATION

Numerous federal criminal statutes supposedly existing since 1948 in Title 18 of the United States Code did not and do not exist in that Title, due to a defect in the passage of a congressional bill, H.R. 3190, in 1948. In addition, the same defective passage resulted in the non-existence of statute 18 U.S.C. § 3231, which purportedly gives federal courts jurisdiction over all federal crimes in each Title, not merely Title 18. **The non-existence of 18 U.S.C. § 3231 means that federal courts do not possess criminal jurisdiction over ANY federal criminal statute, including Title 21 and Title 26 of the criminal code, as well as any statute passed after 1948.**

The law recodifying Title 18, P.L. 80-772, was not legally enacted 1) because the bill, H.R. 3190 (1948) passed by the House on May 12, 1947, in the only vote taken by the House on the bill in the 80th Congress, had no quorum in place as the vote was 38 to 6 when the House had 435 members, in violation of the **Quorum Clause of the Constitution**, and rendering all actions after that vote illegal;  and 2) because the signatures on the bill by the Speaker of the House and President pro tempore of the Senate on June 22 and 23, 1948, were not valid because **no Quorum** was in place in Congress as Congress had completely and fully adjourned *sine die* on June 20, 1948 at 7 A.M. *Clinton v. City of New York*, 524 US 417, 448, 141 L.Ed.2d 393, 420 (1998), *United States v. Munoz-Flores*, 495 US 385 (1990), FN 4. Thus, "*18 U.S.C. § 3231*" *does not exist as a valid statute* and  the district courts nor the appellate courts have any subject-matter jurisdiction over federal criminal statutes.  A district court can not obtain

jurisdiction under the prior criminal statute, because the 1940 enactment (18 USC section 546) and the 1909 enactment does not meet the Fair Warning Doctrine.

In addition, due to the non-passage of H.R. 3190 in 1948, numerous jurisdictional, definitional, procedural, and limitation statutes ostensibly in Title 18 do not exist and have not existed since 1948, ***making all federal prosecutions and convictions since 1948 fatally defective and legally void***: Thus class action petitioners' convictions must be recognized as such and ***expunged***, and all class action Petitioners must be released immediately and their records expunged, their convictions reversed, declared actually innocent of any alleged crimes, regardless of whether they entered a plea agreement or went to trial.

### I.    ON MORE DETAILS...

For more details of the jurisdictional defect, see "MEMORANDUM OF LAW AND FACT REGARDING CLAIM OF VOIDNESS OF PETITIONERS' CONVICTIONS", attached hereto and incorporated herein by reference.

### J.   CivP. 60(b)(4) IS ALSO A PROPER FORM OF RELIEF AS IS 28 USC SECTION 2241, 28 USC SECTION 2255, A SUA SPONTE MOTION TO DISMISS, AND A WRITTEN ALLOCUTION IN LIEU OF SENTENCING

Until recently, both federal district and appellate courts were regularly misconstruing ("recharacterizing") filings under F.R.Civ.P. 60(b) as if they were filed under 28 U.S.C. § 2255. This recharacterization was often done to ***improperly invoke an impediment or obstacle*** to the petitioner/movant, for example, the 28 U.S.C. § 2255 time bar in order to deny relief, or to cause the movant to "use up" his single 2255 filing, or to manufacture

some other obstruction, in order to harm and not to help the unrepresented litigant. ***Thus the court was acting as a second prosecutor, practicing law from the bench, in violation of 28 USC sections 454 and 455.*** This is in direct opposition to both the letter and spirit of *Haines v. Kerner*, 410 US 519, 520 (1972) :

"[...] the allegations of the pro se complaint, [...] we hold to less stringent standards than formal pleadings drafted by lawyers ..."

See also, *Castro v. U.S.*, 540 US 375, 381, 157 L.Ed.2d 778, 786 (2003) which described recharacterization (in rosy terms), then attempted to curb the actual, improper practice: "Federal Courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. [...] They may do so in order to avoid an unnecessary dismissal, e.g., [*United States v. Tindle*, 173 U.S.App.D.C. 77, 592 F.2d 689], at 692-693, [(D.C. Cir. 1975)], to avoid inappropriately stringent application of formal labeling requirements, see *Haines v. Kerner*, 404 US 519, 520, 30 L.Ed.2d 652, 92 S.Ct. 594 (1972) (per curiam), or to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis, see *Hughes v. Rowe*, 449 US 5, 10, 66 L.Ed. 163, 101 S. Ct. 173 (1980) (per curiam); *Andrews v. U.S.*, 373 US 334, 10 L.Ed.2d 383, 83 S.Ct. (1963)." (end quote *Castro v. U.S.*)

**These were not, however, the primary reasons recharacterization of a rule 60(b) motion or 2241 or original habeas to a § 2255 were normally done. The usual reason was simple: By calling a proper 60(b), for example, a "§ 2255" filing, the judge could 'discover' that it was barred by the § 2255 time limit, 'discover' that it was**

a 'second or successive' 2255, and claim that the Movant had to obtain a "Certificate of Appealability", which would be denied as a matter of law. Or, if the Movant's time to file his first § 2255 was NOT 'up', by 'construing' the proper 60(b) as a § 2255, the judge could deny that Movant a genuine § 2255 filing subsequently.

However, *Gonzalez v. Crosby*, 545 US 524, 534, 162 L.Ed.2d 480, 494 (2005), corrected this practice stating:

"Rule 60(b) has an unquestionably valid role to play in habeas cases. The Rule is often used to relieve parties from the effect of a default judgment mistakenly entered against them, e.g., *Klapprott*, 335 US, at 615, 93 L.Ed. 266, 69 S.Ct. 384 [1949] (opinion of Black, J.), a function as legitimate in habeas cases as in run-of-the-mine civil cases. The Rule also preserves parties' opportunity to obtain vacatur of a judgment **THAT IS VOID FOR LACK OF SUBJECT-MATTER JURISDICTION** - a consideration just as valid in habeas cases AS IN ANY OTHER, since the absence of jurisdiction altogether deprives a federal court of the power to adjudicate the rights of the parties. *Steel Co. v. Citizens For a Better Environment*, 523 US 83, 94, 101, 140 L.Ed.2d 210, 118 S.Ct. 1003 (1998). In some instances, it is the State, not the habeas petitioner, that seeks to use Rule 60(b), to reopen a habeas judgment granting the writ. See, e.g., *Ritter v. Smith*, 811 F.2d 1398, 1400 (llth Cir. 1987)." (end quote Gonzalez, emphasis added)

As stated in the dissent to *Gonzalez* by Justice Stevens, joined by Justice Souter, 545 US at 539, 162 L.Ed.2d at 497:

"The most significant aspect of today's decision is the Court's UNANIMOUS rejection of the view that all post- judgment motions under Federal Rule of Civil Procedure 60(b)

except those alleging fraud under Rule 60(b)(3) should be treated as second or successive habeas corpus petitions." (end quote *Gonzalez* dissent, emphasis added)

***A F.R.Civ.P. 60(b)(4) motion )'judgment is void") is an attack, not on the judgment on the merits, but instead on the <u>jurisdiction of the court</u> to address those merits.*** Such a motion is a "'true' 60(b) motion" within the meaning of *Gonzalez v. Crosby*, **not a "second or successive" 2255 filing.**

Petitioners were charged with crimes over which **the original court had no jurisdiction**, because H.R. 3190 didn't pass Constitutionally, so P.L. 80-772 did not become law and is being illegally used by the courts today. Therefore, the original district court did not have subject matter jurisdiction, and the judgments resulting from its use are *void*. Thus, Petitioners are entitled to § 2241 habeas and/or 2255 and/or F.R.Civ.P. 60(b)(4) relief from void judgments and relief according to the original habeas corpus.

Thus, *Gonzalez* overruled cases such a *U.S. v. Fair*, 326 F.3d 1317, 1318 (llth Cir. 2003), which had stated:

"In *U.S. v. Mosavi*, 138 F.3d 1365 (llth Cir. 1998), we addressed the applicability of Rule 60(b) in the context of a criminal case. [...] This Court stated, however, that the Federal Rules of Civil Procedure limited their application to CIVIL cases. Consequently, we held that the appropriate vehicle for challenging the forfeiture was *Mosavi's* direct criminal appeal and his conviction and sentence and that Rule 60(b) simply does not provide for relief from judgment in a criminal case." emphasis in original; end quote *U.S. v. Fair*)

The Supreme Court's reference in *Gonzalez* to the Eleventh Circuit's case *Ritter v. Smith*
(1987) highlighted that *Ritter* utterly contradicted Eleventh Circuit's case *U.S. v. Fair*
(2003). What was the source of the Eleventh Circuit's reversal? After the passage of
AEDPA in 1995, Circuits were so anxious to improperly extend that law's bars that they
actually invented illegal rules to keep § 2255-denied prisoners "out of court" on valid
60(b) claims, too.

The discovery that purported statute 18 U.S.C. § 3231 is invalid constitutes **"newly
discovered evidence by which due diligence could not have been discovered in time
to move for a new trial under Rule 59"**, which can be addressed by Rule 60(b)(2). If
any reasonable fact-finder had been informed that these statutes were invalid, and there
was no valid federal court criminal jurisdiction over acts in violation of statutes in Title 8,
18, 21, 26, etc., the judge would not have found Plaintiffs guilty of the offense.
Ordinarily, there is a 1-year deadline after the judgment is entered, but in this case
*Defendants* actively obstructed Plaintiffs' ability to learn of the invalidity of the Statute
18 U.S.C. § 3231. Consequently, this argument should qualify under Rule 60(b)(6), in
addition to Rule 60(b)(4). **Alternatively, this qualifies as "fraud on the court" under
Rule 60(b)(6), because the law was misrepresented by the government to make it
appear that these statutes, including 18 U.S.C. § 3231, were valid**. Thus, Plaintiffs'
claims for relief under both § 2241 habeas and Rule 60(b)(4),  because the basis for
federal court criminal jurisdiction, 18 U.S.C. 3231, was invalid at both the district and
appellate court level.

## K. **A COURT MUST NOTICE ERROR "AT ANY TIME": F.R.Cr.P. 12 (b)(2)**

Failure of an indictment to allege a violation of a valid criminal statute means it is **legally insufficient**. According to *Hughes v. Thompson*, 415 US 1301, 1302, 39 L.Ed.2d 93, 95 (1974): "[u]nder the Federal Rules of Criminal Procedure the question of the sufficiency of the indictment "shall be noticed by the court at any time.' Rule 12 (b)(2)". (end of quote *Hughes v. Thompson*)

See *U.S. v. Ropp*, 347 F.Supp.2d 831, 833 (C.D.Cal. 2004): "[Rule 12] apparently permits a defendant to move to quash an indictment for failure to state an offense. *Ex Parte Parks*, 93 US 18, 20 23 L.Ed. 787 (1876). Thus, if no statute makes the alleged offense a crime, a defendant may challenge that defect under Rule 12." (end quote *U.S. v. Ropp*.)

*Ex Parte Parks*, cited in *Ropp*, held:

"Whether an act charged in an indictment is or is not a crime by the law which the court administers (in this case the statute law of the United States) is a question which has to be met at almost every stage of criminal proceedings; on motions to quash the indictment, demurrers, or on motion to arrest judgment, etc." (end quote *Ex Parte Parks*)

Therefore, Petitioner moves the court to take **mandatory judicial notice** that the statutes of which defendants were ostensibly convicted were **legally non-existent** since the 18 U.S.C. criminal statutes of 1948 were not re-numbered, or the courts had no subject-matter jurisdiction over the crimes, because 18 U.S.C. § 3231 has not existed since 1948 because no quorum existed to pass the statute on May 12, 1947 when the House voted on the bill and no quorum existed on June 22 and 23, 1948 when the Speaker of the House and President pro tempore of the Senate signed the alleged bill.

### L.    RULE 60(b) (ERROR CORAM NOBIS) MOTION IS CONTINUATION OF A CRIMINAL CASE, NOT NEW CASE UNDER A NEW (CIVIL) DOCKET NUMBER, OR ALTERNATIVELY, PETITIONER HAS RIGHT UNDER WRITTEN ALLOCUTION IN LIEU OF SENTENCING TO CHALLENGE THE JURISDICTION OF THE COURT

*U.S. v. Morgan*, 346 US 502, 520, 98 L.Ed. 248, 261 (1954) held that a motion under

Error Coram Nobis is a continuation of a criminal case:

"We therefore treat the record as absolutely presenting a motion in the nature of a writ of

error coram nobis enabling the trial court to properly exercise its jurisdiction. *Adams v.

U.S.*, 317 US 269, 272, 87 L.Ed. 268, 271, 63 S.Ct. 236. 143 ALR 435. (Note 4)."

(and quote *U.S. v. Morgan*) *Morgan,* 98 L.Ed, at 271, note 4:

"Such a motion is a step in the criminal case and not, like habeas corpus where relief is

sought in a separate case and record the beginning of a separate civil proceeding. *Kurtz v.

Moffit*, 115 US 487, 494, 29 L.Ed. 458, 459, 6 S.Ct. 148. While at common law the writ

of error coram nobis was issued out of chancery like other writs, Stephens, Principles of

Pleading 3d Am. Ed. 142, the procedure by motion in the case is now the accepted

American Practice. *Pickett's Heirs v. Legerwood*, (U.S.) 7 Pet 144, 147, 8 L.Ed. 638, 639;

*Wetmore v. Karrick*, 205 US 141, 151, 51 L.Ed. 745, 748, 27 S.Ct. 434; *U.S. v. Mayer*,

235 US 55, 67, 59 L.Ed. 129, 135, 35 S.Ct. 16. As it is such a step, we do not think that

Rule 60(b), Fed. Rules of Civ. Proc., expressly abolishing the writ of error coram nobis in

civil cases, applies." (end quote Note 4, *U.S. v. Morgan*)

### M.    OPTION TO APPOINT COUNSEL:

F.R.Cr.P. 44(a), 18 U.S.C. §3006A, Felony defendants have a right to appointment of

counsel. *Powell v. Alabama*, 287 US 45, 77 L.Ed. 158 (1932) ; *Gideon v. Wainwright*,

372 US 335, 9 L.Ed.2d 799 (1963); *Anders v. California*, 386 US 738, 18 L.Ed.2d 493 (1967); *Faretta v. California*, 422 US 806, 45 L.Ed 562 (1974) ; *Scott v. Illinois*, 440 US 367, 59 L.Ed.2d 383 (1979); *Davis v. U.S.*, 512 US 452, 129 L.Ed.2d 362 (1994).

18 U.S.C. § 3006A(c) states, in relevant part:

"Duration and substitution of appointments. A defendant for whom counsel is appointed shall be represented **AT EVERY STAGE OF THE PROCEEDINGS** from his initial appearance before the United States Magistrate [United States Magistrate Judge] or the court through appeal, INCLUDING ANCILLARY MATTERS APPROPRIATE TO THE PROCEEDINGS."

(18 U.S.C. §3006A; emphasis supplied.) 18 U.S.C. § 3006A was enacted after *U.S. v. Morgan* (1954), supra, which had held that an Error Coram Nobis (Rule 60(b)) proceeding is a "continuation of a criminal case." *Morgan*, 98 L.Ed, at 271, Note 4.

In *Lorillard v. Pons*, 434 US 575, 581, 55 L.Ed.2d 40, 46 (1977), the Supreme Court held:

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change, see *Albemarle Paper Co. v. Moody*, 422 US 405, 414 n.8, 45 L.Ed.2d 280 (1975) . "

(end quote *Lorillard v. Pons*)

In the case of 18 U.S.C. § 3006A, after its passage in 1964 it was subsequently amended in 1968, 1970, 1974, 1982, 1984, 1986, 1987, 1988, 1996, 1997, 2000, and 2004. These amendments did not change the principle, that an attorney is appointed to serve "at all stages" of a criminal case, in any relevant or significant way. By the principle of

*Albemarle v. Moody*, supra, Congress is presumed to adopt the judicial interpretation of *U.S. v. Morgan*, supra.

And 18 U.S.C. § 3006A(c), as of its initial enactment by Congress in 1964, guarantees an attorney "at all stages" of a criminal proceeding. Hence, Congress intended that the guarantee in 3006A of an appointed counsel "at all stages of a criminal case" applies to Rule 60(b) proceedings.

Analogously, in *Whitfield v. U.S.*, 543 US 200, 216, 160 L'.Ed.2d 611, 615 (2005) : "Congress is presumed to have had knowledge of *Nash [v. U.S.*, 229 US 373, 57 L.Ed. 1232 (1913)] and *Singer [v. U.S.*, 323 US 338, 89 L.Ed. 285 (1945)] when it enacted [18 U.S.C.] 1956(h)." (end quote *Whitfield v. U.S.*)

Likewise, Congress was aware of *U.S. v. Morgan*, which held that an error coram nobis proceeding is a continuation of a criminal case, and ***is not a COLLATERAL attack*** under a civil docket number, when it voted to grant a statutory right to an appointed counsel "at all stages" of a criminal proceeding. Therefore, defendants' right to an appointed attorney, for purposes of preparing and litigating that necessary motion, is guaranteed by 18 U.S.C. § 3006A(a), since it is the continuation of a criminal case and/or an "ancillary proceeding" under 3006A(c). See *U.S. v. Martinson*, 809 F.2d 1364 (9th Cir. .1987) :

"However, on this record it is irrelevant whether *Martinson's* motion for return of the property was technically filed as a criminal or civil matter. The public defender, once validly appointed, was clearly justified in continuing his representation of *Martinson*. The motion was sufficiently related to the 1977 criminal case as to be considered an

"ancillary" proceeding for purposes of 18 U.S.C. 3006A(c)". (end quote *U.S. v. Martinson*)

A Rule 60(b) (4) motion seeking to overturn a conviction **for voidness** is at least as related to a criminal case as the return of the property in *Martinson*, supra. And, it is quite clear that if the defendants had known of the jurisdictional problem at the time, they could have raised the issue of the invalidity of 18 U.S.C. § 3231 (1948) at the time of their indictments, pre-trial, trial, post-trial, or on direct appeal, and at that time they would have been entitled to the services of an appointed attorney to do this work. **The fact that time has passed doesn't make these rights less real:** *There is no time limit on an attack on a 'void judgment'*: See F.R.Civ.P. 60(b)(4). A Rule 60(b) motion is not a "collateral attack", and it is not a "habeas proceeding". A Rule 60(b) motion, as clearly stated in *U.S. v. Morgan*, supra, is a continuation of a criminal proceeding, to which defendants have the right to an attorney "at all stages" under 18 U.S.C. § 3006A(c).

## N.     ACTS NOT DISCOVERABLE WITH "DUE DILIGENCE'

Even if this filing were re-construed under 28 U.S.C. § 2255, it would be improper to apply the § 2255 time bar, because of the exception of § 2255(4):

**"The limitation period shall run from the latest of --[...] (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." (28 U.S.C. § 2255(4))**

**The facts on which this claim is founded are located in the pages of the 1947-48 Congressional Record. Only there would one discover that the *House of***

*Representatives had no quorum on May 12, 1947, and that they merely "concurred"*
*with the amendments to bill H.R. 3190, yet did not vote on the full, as-amended bill.*
*The additional fact that the Speaker of the House and President pro tempore of the*
*Senate signed the bill on June 22 and 23, 1948 with no quorum in place are likewise*
*discovered in the Congressional records.* **These facts are not present in the books**
**available in the law libraries in the prisons of the BOP**. To the contrary, these facts are
contradicted by false assertions in law books, such as:

"18 U.S.C.S. § 1": (Falsely asserts that Title 18 was recodified, and includes a long table
of correspondence between old and new statute numbers: "TABLE OF DISPOSITIONS
[/p/]. This table indicates where former Title 18 sections were incorporated in Title 18, as
revised by Act June 25, 1948, ch 645, 62 Stat. 683, or in other Code provisions, or, if
omitted, the reason therefore"";

**"18 U.S.C.S. § 3231": (Falsely states that )"This section was formed by combining**
**former 18 U.S.C. § 546 and 547 with former 12 U.S.C. § 588d, with no change of**
**substance.");**

Any person (especially a pro-se prisoner) depending on these ostensibly authoritative law
books for accurate information would be dissuaded from proceeding further, and he/she
would never find the error. **Federal prison libraries don't stock the Congressional**
**Record.** The necessary facts are also not accessible through the LEXIS law computer
system that is being installed in some new prisons, displacing the books. Not shelving the
voluminous Congressional Record may have seemed understandable back in the era of
paper: Petitioner roughly estimates that the full set of Congressional Record books would

require about the same shelf space as 4000 books the size of a F.3d (Federal Reporter, Third Edition) book. However, measured now as computer hard-disk data it should amount to about 35 gigabytes, which is less than 2% of the storage capacity of the largest computer hard drive commercially available. (Which is about 2 terabyte, or 2000 gigabytes, or 2,000,000 megabytes. Today, a 100-gigabyte drive is considered small). Unfortunately, the federal government, the BOP, and therefore the prison library staff have an uncompromising and hostile attitude towards obtaining legal material beyond which the library carried in the 1900's. **This fact coupled with the passing of the AEDPA has greatly discouraged prisoners from filing any kind of appeals, <u>precisely as intended by the AEDPA.</u>** Most federal prison libraries, the ones with books, carry Supreme Court decisions dating back to 1960. Their earliest book is typically 4 L.Ed.2d. Their F.2d's are similarly limited, dating back to around 267 F.2d (1959). ***Thus, omitted is the critical first 10 years of legal precedent after the presumptive passage of H.R. 3190.***

This, and the complete lack of the Congressional Record, completely blocks the ability of prisoners to detect (or independently confirm) the existence of faults in the passage of bills in Congress that initiate or amend federal criminal (or civil) laws. It would be virtually impossible for a pro se prisoner to detect these kinds of legal defects in his/her conviction: ***Prisoners simply cannot find them by the exercise of "due diligence", the expressed standard for the application of 28 U.S.C. § 2255 (4) .***

See *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004) repeated that Circuit's principle: "We have previously noted that a due diligence inquiry should take into account that

prisoners are limited by their physical confinement. *Montenegro v. U.S.*, 248 F.3d 585, 592 (7th Cir. 2001), rev' d on other grounds, *Ashley v. U.S.*, 266 F.3d 671 (7th Cir. 2001); see also *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000) (finding a prisoner's access to published legal materials is established once the prison library receives the materials, not when the materials were published.)"(end quote *Moore v. Knight*)

As concurred by Judge Tashima in *Whalem/Hunt v. Early*, 233 F.3d 1146, at 1148: "Neither the 'impediment' standard contained in the standard, 28 U.S.C. § 2244(d)(1)(B), nor this court's equitable tolling standard, see *Calderon v. United States Dist. Court* (Beeler), 128 F.3d 1283, 1288-89 (9th Cir. 1997), overruled on other grounds, *Calderon v. United States Dist. Court* (Kelly), 163 F.3d 530, 540 (9th Cir. 1998) (en banc), cert. den. 526 US 1060 [...], requires that petitioner prove an inability to "research and identify [his/her] claims", as the district court held, in order to rely upon barriers to researching legal issues as the basis for delaying the start of, or tolling, the statute of limitations. A prisoner acting pro se can be prevented from discovering the most basic procedural rules essential to avoid being summarily thrown out of court, even if the claims alleged in the petition are meritorious, well-drafted, and supported by every pertinent citation entitling him to relief on the merits. Cf. *Rand v. Rowland*, 154 F.3d 952, 958 (9th Cir. 1998) (en banc), cert. Den., 527 US 1035 (1999) (noting handicaps faced by prisoners acting pro se in complying with procedural requirements.). A petitioner's knowledge of the legal basis of his claims is not the same as knowledge of the procedural rules that must be complied with in order to get a hearing on the merits." (end quote *Whalem/Hunt v. Early*)

*Rand v. Rowland*, 154 F.3d 952, 958 (9th 1998), reciting a litany of disadvantages of pro-se prisoners, stated:

"Pro se prisoners are also limited in their access to legal materials. *Jacobsen*, 790 F.2d at 1364 n.4 (Citing *Moore v. Florida*, 703 F.2d 516, 520 (llth Cir. 1983))."
(end quote *Rand v. Rowland*).

## O.    CAUTION: DO NOT MISTAKE THIS ARGUMENT FOR OTHERS

A Title 18 argument has been repeatedly rejected in various courts across the country.

See, e.g..: *U.S. v. Martinez*, 2006 WL 1293261 (S.D.Tex 2006); *Derleth v. U.S.*, 2006

WL 1804618 (S.D.Tex. 2006); *U.S. v. Risquet*, 426 F.Supp.2d 310 (E.D.Pa.2006); *U.S. v.

Lawrence,* 2006 WL 250702 (N.D.Ill. 2006). The reason that OTHER arguments have

been rejected is that **the argument was FLAWED**, but not because **the underlying issue**

wasn't valid. The instant argument does not claim that H.R. 3190 "died in the inter-

session recess", nor does it object to the post-adjournment signing, The argument simply

proves, according to the Congressional Record, **that 1) no quorum existed** on May 12,

1947 when Congress voted 38 to 6, and all subsequent acts during that session were

illegal, when the House passed Public Law 80-772, and that 2) **no quorum existed** on

June 23, 1948, when the President pro tempore of the Senate and the Speaker of the

House signed Public Law 80-772 after Congress had completely and fully adjourned *sine

die* on June 20, 1948 at 7 AM. Both quorum violations are Constitutional in nature, Art. I,

Section 5, Cl 1, and each or both render the statute invalid and unconstitutional, **void ab

initio.**

## P.     OVER 1000,000 LAWYERS COULD NOT FIND THIS ERROR

Perhaps Respondents will argue that despite the obstruction by DOJ AND BOP to

defendants' and Plaintiffs' discovery of the defect, they should have discovered it if "due

diligence" had been employed. ***That argument is nonsensical***. Since 1948, well

over a million prosecutions of violations of law under 18 U.S.C., 21 U.S.C., 8 U.S.C.,

and 26 U.S.C. have occurred. The vast majority of them have been professionally

defended by trained attorneys at the pre-trial, trial, and direct appeal stages, **which**

**probably amounts to over 100,000 different attorneys. Those attorneys were and are**

**ethically bound to represent their clients zealously, identifying any arguable flaws in**

**those charges, and those attorneys were and are ethically bound to engage in "due**

**diligence" of their own, including due diligence of the court's jurisdiction. See ABA**

**rules for criminal attorneys; state bar rules for each state.**  Indeed, the standard of

"due diligence" for attorneys is far higher than that of pro se unlettered defendants. See

*Haines v. Kerner*, 404 US 519, 30 L.Ed.2d 652 (1972).

Those attorneys should have raised and argued the invalidity of the recodification of Title

18 and 18 USC section 3231 at the pre-trial, post-trial, appeal, and collateral attack stages

of those cases, if they properly researched the problem. Those attorneys would have had a

powerful motivation, and an ethical obligation, to do so: ***The jurisdictional challenge***

***presented herein  would be a "dead bang winner" and a win in any federal criminal***

***case***. A dead-bang winner is defined as "an issue which was obvious from the trial record

and would have resulted in a reversal on appeal." *James v. McKee*, 2009 U.S. Dist.

LEXIS 102380 ( E.D. Mich. Nov. 3, 2009)

If even a tiny fraction of those attorneys had noticed the error and raised an objection to the 18 U.S.C. recodification issue over time (say, 1948-2010), there would be hundreds and eventually thousands of district-court-level and appeal-level cases which would have considered the issue and argument and ruled in its favor, assuming the judges followed their oaths to uphold the constitution. Such cases could, if they exist, easily be found with modern computer-based legal research tools.

Even if Petitioner's instant claim (invalidity of 18 U.S.C. recodification) was merely arguable (but ultimately wrong) then the government could easily cite numerous cases in which this same argument was made, considered, and rejected with credible explanations, based on fact and law.

If the Respondent asserts that Petitioner should have discovered these facts (concerning H.R. 3190/P.L. 80-772) with the exercise of "due diligence", Respondent is obligated to show legal precedent which, at least, demonstrates that trained attorneys have found this error with their better training, greater experience, and far better access to (substantially superior) computerized research tools. If the government cannot show that, this court must rule that a pro se imprisoned non-lawyer (such as Petitioner and most prisoners) couldn't reasonable be expected to find this error either, and therefore, 28 U.S.C. § 2255(4) applies: For pro se prisoners, "due diligence" was not enough to find this error. So there can be no time limit to a § 2255 filing until and including now.

As was held in *Locascio v. U.S.*, 395 F.3d 51, 55 (2nd .Cir. 2005) :

"28 U.S.C. § 2255 subsection (4) does not require the maximum feasible diligence, only 'due', or reasonable diligence', *Wims v. U.S.*, 225 F.3d 190, n.4 (2nd Cir. 2000)."

(end quote *Locascio v. U.S.*)

"Section § 2255(4) is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run. Rather, it resets the limitation's period's beginning date, moving it from the time when the conviction becomes final, see 2255(1), to the later date on which the particular claim accrued. See *Smith [v. McGinniss]*, 208 F.3d at 15 (2nd Cir. 2000). (distinguishing tolling provisions from those that restart the limitations period.)" (end quote *Wims v. U.S.*)

And from *Wims* at note 4:

"The statute [ §2255(4)] does not require the maximum feasible diligence, only "due", or reasonable, diligence. Cf. *Armstrong v. McAlpin*, 699 F.2d 79, 88-89 (2nd Cir. 1983) (requiring "reasonable" or "ordinary" diligence in the discovery of fraud for statute of limitation purposes." (end quote *Wims v. U.S.*).

It is interesting to note how the State Bar of Texas dealt with Engin Derkunt, who has handled more pro bono cases than any attorney in Texas, when he researched and discovered the invalidity of Public Law 80-772 based on the unconstitutionality due to the violation of the quorum clause, Art. I, Sect. 5 Cl. 1, and *United States v. Ballin,* 144 U.S. 1 (1892). The Austin Federal Court, Magistrate Austin, first threatened Derkunt to prevent him from presenting the argument, then the State Bar sanctioned Mr. Derkunt, in order to prevent other attorneys from presenting the argument, inducing a fear to attorneys from properly practicing law in the State of Texas as well as other states. Those threats are clear evidence that courts are afraid of addressing the issue of their own

jurisdiction. Mr. Derkunt has now re-obtained his authority to practice law, because on appeal Derkunt proved that the argument is valid.

### Q. CONCLUSION

This is a class action petition seeking a declaration of actual innocence for all petitioners listed. Lead Petitioner has exhausted all administrative and court remedies. All petitioners should be declared actually innocent, by order of the court, because the 80th Congress committed two quorum violations in the passage of Public Law 80-772, on May 12, 1947, and again on June 22 and 23, 1948.

### R. PRAYER FOR RELIEF

Petitioner moves this court to:

Appoint an attorney for this class action, under 18 U.S.C. § 3006A and Rule 23(g),and Rule 44(a) competent in Constitutional Law;

Take mandatory judicial notice pursuant to FRE 201 of the facts alleged herein, including pages from the Congressional Record which establish that Public Law 80-772 was never constitutionally passed 1) since no quorum was present on May 12, 1947 when the House of Representatives presented their only vote on HR 3190, and after the vote of 38 to 6 on May 12, 1947, all actions of the House were illegal, and 2) no quorum was in place on June 22 and 23, 1948 when the Speaker of the House and President pro tempore of the Senate signed the bill after Congress had completely and fully adjourned sine die on June 20, 1948 at 7 AM;

Declare that H.R. 3190 was not legally passed in 1948, and so P.L. 80-772 was not legally enacted, including 18 USC section 3231, and P.L. 80-772 as well as H.R. 3190 are *null and void ab initio*;

Declare that the trial and appeal courts do not have criminal jurisdiction over any crime in Titles 8, 18, 21, 26, etc, at the time of the alleged crimes, at the time of indictment, or at the times of trial, sentencing, or appeal, or thereafter, because of the non-existence of 18 U.S.C. § 3231, and thus no federal jurisdiction exists over these crimes.

Declare that any district court or appellate court cannot obtain jurisdiction due to a prior enactment of Title 18 because the 1940 enactment of 18 USC section 546 was repealed in 1948 and because the 1909 enactment could not be used because it would be in violation of the Fair Warning Doctrine.

Vacate Petitioners' sentences and convictions and order the "U.S. Courts" (U.S Probation Office), the Federal Bureau of Prisons, and all other person-detaining sub-organizations to free all Petitioners listed in this petition as class petitioners, and erase their federal criminal records.

Order the Federal Government to return all money seized (directly or indirectly) from any Class Petitioners, with interest at the maximum rate allowed by law.

Signed, _____ Dated, _____

**Harry Edwin Miles, lead Petitioner**

**Reg, No. 17768-112**

**FCI Victorville**

**P.O. Box 5300**

**Adelanto, CA 92301**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **HARRY EDWIN MILES, et al** | c | |
| **Plaintiffs/Petitioners** | c | |
| **v.** | c | **CASE NO. _____** |
| **UNITED STATES DEPARTMENT** | c | |
| **OF JUSTICE,** | c | |
| **ERIC HOLDER, IN HIS OFFICIAL** | c | |
| **CAPACITY, OR OFFICE HOLDER,** | c | |
| **FEDERAL BUREAU OF PRISONS,** | c | |
| **HARLEY LAPPIN, DIRECTOR** | c | |
| **OR CURRENT OFFFICE HOLDER,** | c | |
| **UNITED STATES OF AMERICA,** | c | **© 2012** |
| **Defendants/Respondents** | c | **Verified** |

## MEMORANDUM OF LAW AND FACT RELATED TO CLASS ACTION CLAIM

### MEMORANDUM OF LAW AND FACT REGARDING CLAIM OF VOIDNESS OF CONVICTIONS AND/OR CHARGES AND/OR PENDING CHARGES

MEMORANDUM INDEX . . . . . . . . .
Caption: Habeas Memorandum of Law and Fact . . . .
Index to Habeas 'MEMORANDUM OF LAW AND FACT' . . .
Legal Background of Habeas and Rule 60(b)(4) Claim . . .
Claim: 1948-Recodifled Title 18, § 3231 Are Invalid . . . .
Effect of Lack of Passage . . . . . . .
Similar Argument Invalid . . . . . . . .
Individual Criminal Statutes Not Recodified . . . . .
Longevity Ineffective to Pass Bill . . . . . .

Judicial Notice . . . . . . . . .
Court is Obligated to Accept, Adjudicate This Case . . . .
Court is Obligated to Investigate its Jurisdiction . . . .
Court Must Cognize and Correct This Error . . . .
Marshall Field v. Clark Does Not Control This Case . . . .
Clinton v. NYC, Munoz-Flores Overturn Marshall Field . . .
Marshall Field Overturned, Dicta Not Relevant Here . . .
Clinton v. NYC Apply, Not Marshall Field . . . . .
Marshall Field Did Not Control This Case 1948-1989 . . .
Conviction Based on Invalid Statute is Void . . . . .
Void Judgment Is a Legal Nullity . . . . . .
No Time Limit on an Attack on a Void Judgment . . . . .
Court: No Discretion to Fail to Vacate Void Judgment
Signatures . . . . . . . . .

# MEMORANDUM

A.  ## LEGAL BACKGROUND OF CLASS ACTION AND/OR HABEAS AND/OR RULE 60(b)(4) JOINDER VOIDNESS CLAIM

Federal courts are courts of limited jurisdiction. *U.S. v. Flores*, 289 US 137, 151, 77 L.Ed. 1086, 1091 (1933) :

"The criminal jurisdiction of the United States is wholly statutory, see *U.S. v. Hudson*, 7 Cranch 32, 3 L.Ed. 259 (1812) . " (end quote *U.S. v. Flores*).

*U.S. v. Hudson*, 7 Cranch 'at 33, held:

"**Of all the courts which the United States may, under their general powers, constitute, one only – the Supreme Court – possesses jurisdiction derived immediately from the Constitution, and of which the legislative power cannot deprive it. All other courts created by the general government possess no jurisdiction but what is given them by the power that creates them, and can be vested with none but what the power ceded to the general government will authorize them to confer. [...] The legislative authority of the Union must first make an act a crime, affix a punishment to it, and declare the court that shall have jurisdiction of the offense.**" (end quote *U.S. v. Hudson*).

Accord Staples v. U.S., 511 US 600, 604, 128 L.Ed.2d 608, 615 (1994), citing *Liparota v. U.S.*, 471 US 419, 85 L.Ed.2d 434 (1985):

"[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." Id., at 424, 85 L.Ed.2d 434 (citing *United States v. Hudson*, 7 Cranch 32, 3 L.Ed. 259 (1812))." (end quote from *Staples v. U.S.*)

See also, *Hanford v. Davies*, 163 US 273, 279, 41 L.Ed. 157, 159 (1896):

"It is well settled that, as the jurisdiction of a circuit court of the United States is limited in the sense that it has no other jurisdiction than that conferred by the Constitution and laws of the United States, the presumption is that a cause is without its jurisdiction unless the contrary affirmatively appears; and that it is not sufficient that jurisdiction may be inferred argumentatively from averments in the pleadings, but the averments should be positive. *Brown v. Keen*, 33 US (8 Pet.) 112 [8:85]; *Grace v. American Cent. Ins. Co.* ,.109 US 278, 283 [27: 932, 935]." (end quote Hanford v. Davies)

Accord *Barnette v. Wells Fargo Nevada Nat. Bank*, 270 US 438, 447, 70 L.Ed. 669, 676 (1926), citing *Hanford v. Davies*.

*U.S. v. Rogers*, 23 F. 658, 1885 U.S. Dist. LEXIS 50 (D.C. WD Arkansas, 1885) said: .

"Jurisdiction can be raised at any stage of a criminal proceeding. It is never presumed, but must always be proved, and it is never waived by a defendant."(end quote *U.S. v. Rogers*).

*Manchester v. Commonwealth of Massachusetts*, 139 U.S. 240, 262, 35 L.Ed. 159, 166 (1891) stated:

"…the courts of the United States, merely by virtue of this grant of judicial power, and in the absence of legislation by Congress, have no criminal jurisdiction whatever. The criminal jurisdiction of the courts of the United States is wholly derived from the Statutes of the United States, *Butler v. Boston S.S.S. Co.*, 130 US 527 [32: 1017]; *The Belfast*, 74 US 7, Wall. 624 [19: 266]; *The Eagle*, 75 US (8 Wall.) 15 [9: 365]; *Leon v. Galceran*, 78 US (11 Wall.) 185 [20:74]; *American S.B. Co. v. Chase*, 83 US 522 (16 Wall.) [21: 369];

9 R.I. 419; *Schoonmaker v. Gilmore*, 102 US 118 [26: 96]; *Martine Ins. Co. v. Dunham*,

78 US (11 Wall.) 1 [20: 90]; *Jones v. U.S.*, 137 US 202, 211 [34: 691, 695]."

(end quote *Manchester v. Mass.*)

*U.S. v. Hall*, 98 US 343, 345-46, 25 L.Ed. 180, 181 (1879) held:

"[Federal courts] possess no jurisdiction over crimes and offenses committed against the

authority of the United States, except what is given to them by the power that created

them; nor can they be invested with any such jurisdiction beyond what the power ceded

to the United States by the Constitution authorizes Congress to confer, from which it

follows that before an offense can become cognizable in the circuit court, the Congress

must first define or recognize it as such, and affix a punishment to it, and confer

jurisdiction upon some court to try the offender. *U.S. v. Hudson*, 7 Cranch 32, U.S. v.

Coolidge, 1 Wheat 415; 1 Am. Cr. L., sec. 163. Courts of the kind were not created by

the Constitution, nor does the Constitution invest them with any criminal jurisdiction. [...]

Treason is defined by the Constitution, but it has never been decided that the offender

could be tried and punished for the offense until some court is vested with the power by

an Act of Congress." (end quote *U.S. v. Hall*).

It was held in *Kline v. Burke Constr. Co*, 360 US 226, 234, 67 L.Ed. 226, 232 (1922):

"Only the jurisdiction of the Supreme Court is derived directly from the Constitution.

Every other court created by the general government derives its jurisdiction wholly from

the authority of Congress. That body may give, withhold, or restrict such jurisdiction at

its discretion, provided it be not extended beyond the boundaries fixed by the Constitution.

*Turner v. Bank of North America*, 4 Ball, 8, 10, 1 L.Ed. 718, 719 [(1799)] [...] The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an Act of Congress to confer it. *Nashville v. Cooper*, 6 Wall, 247, 252, 18 L.Ed. 851, 852 [(1868)]".(end quote *Kline v. Burke*)

Accord *Ankenbrandt v. Richards*, 504 US 689, 698, 119 L.Ed.2d 468, 479 (1992), citing *Kline v. Burke*, supra, and *Gary v. Curtis*, 3 How 236, 245, 11 L.Ed. 576 (1845); *Sheldonv. Sill*, 8 How 441, 12 L.Ed. 1147 (1850); *Plaquemines Tropical Fruit Co. v. Henderson*, 170 US 511, 42 L.Ed. 1126 (1898); *Lockerty v. Phillips*, 319 US 182, 87 L.Ed. 1339 (1943)

.

## B.     CLAIM: 1948-RECODIFIED TITLE 18, 18 U.S.C. § 3231 ARE INVALID

The purpose of H.R. 3190 (80th Congress, 1947-48) was to "recodify" (reorganize) Title 18, United States Code. Had it been passed correctly it would have re-numbered and thus re-ordered every then-existing Title 18 crime, jurisdictional and procedural statute, and rule. ***But because H.R. 3190 was not validly passed, P.L. 80-772 was not validly enacted***, along with 18 U.S.C. § 3231 (the jurisdictional statute, which is invalid under the In Toto Provision). These statutes do not now legally exist, despite a widespread misperception that they do. ***Without 18 U.S.C. § 3231, federal courts do not have subject-matter jurisdiction over crimes in Titles 8, 18, 21, 26, and ANY other criminal statute.*** And so charges of violations of those statutes are legally and Constitutionally

defective. Therefore, those statutes do not state a crime against the laws of the United States. A person can be factually innocent or legally innocent.

***The alleged passage of Public Law 80-772 violated the Quorum Clause of the Constitution***. The House of Representatives introduced this bill on April 24, 1947. See H.R. Rep. No. 304, 80th Cong., 1st Sess., 100 app. (1947). Congress voted to amend it, 93 Cong. Rec. 5048-49, 5121, and then voted on the newly-amended bill, and voted "for" that bill on May 12, 1947, 93 Cong. Rec. 5048, 5049. However, that vote was legally unconstitutional and meaningless, because **the House did not have a quorum present** at this vote, which is a constitutional requirement for Congress to do legislative business. (A quorum is defined by the Constitution as a majority of the members of the House (or Senate)). So, the bill was not 'passed' within the meaning of the U.S. Constitution. See Art. 1, Sec. 5, Cl. 1. Furthermore, the House was required to either adjourn until a quorum was present, or to send the Marshals to obtain the missing parties until the House could constitute a quorum. Any actions of Congress after a quorum was not present, were illegal. So on May 12, 1947, after the Quorum violation, all acts of Congress were illegal.

The House of Representatives then sent that bill to the Senate, and Congress adjourned. S. Con. Res. 33, 93 Cong. Rec. 10522, 10439, July 26, 1947. The Senate never voted on that version of the bill, however, the Senate introduced a bill June 14, 1948. 94 Cong. Rec. 8075. On June 18, 1948, the Senate first voted to add its own amendments to the text of the House's bill, see S. Rep. 1620, 80th Cong., 2d Sess. 2430 (1948), and then (separately) voted and passed that newly-amended version, June 18, 1948, presumably

with a quorum. 94 Cong. Rec. 8721-22. (Whether a quorum was present for the Senate

vote is not clear). The Senate then sent the amended bill to the House of Representatives.

94 Cong. Rec. 8864. See Daily Digest, 94 Cong. Rec. D556-557, 80th Congress.

However, the same day, June 18, 1948, the House merely voted to **"concur"** with the

Senate's amendments, 94 Cong. Rec. 8864-65: See S. Rept. 1620, 80th Cong., 2d Sess.,

2430 (1948). 94 Cong. Rec. 9158. The House did not go further and vote on the final

passage of the as-amended bill.

Despite these omissions and errors, the bill was 'examined' by the House and Senate

leaders on June 19, 1948, Cong. Rec. 9354, 9363. Congress adjourned *sine die* on June

20, 1948 at 7 A.M.  The Speaker of the House and President pro tempore of the Senate

then signed the bill on June 22 and 23, 1948, when Congress was fully and completely

adjourned*, sine die*, the second quorum violation regarding Title 18. The bill was then

presented to President Truman, 94 Cong. Rec. 9365, who signed the measure on June 25,

1948, 94 Cong. Rec. 9367, seemingly making it a valid law. It was labeled "Public Law

80-772″.

## C. <u>EFFECT OF LACK OF PASSAGE</u>

P.L. 80-772, in addition to ostensibly recodifying Title 18 and also initiating 18

U.S.C. § 3231 (among hundreds of other statutes), also repealed the Title 18 predecessor

statutes that had made up the previous federal criminal statutory law. See Pub.L. No. 80-

772, 21 (Schedule of Laws Repealed) (available at 1948 U.S.C.C.A.N., Vol I, p. A562 et

seq.).

The Historical and Statutory Note accompanying 18 USCS section 3231 reflects that section 3231 was "formed by combining sections 546 and 547 of Title 18, U.S.C....". (18 U.S.C. § 3231, Historical and Statutory Note.) However, the prior statute, 18 U.S.C. § 546 (1940) only provided federal courts jurisdiction over violations of statutes in Title 18, and not statutes in other titles, such as Titles 8, 21, 26, etc.

18 U.S.C. § 546 (1940) stated: "The crimes and offenses defined in this title [Title 18] shall be cognizable in the district courts of the United States, as prescribed in section 41 of Title 28."

18 U.S.C. § 547 (1940) said: "Nothing in this title [Title 18] shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof."

12 U.S.C. § 588d (1940) said: "Jurisdiction over any offense defined by sections 588b and 588c of this title [Title 12] shall not be reserved exclusively to the courts of the United States."

In contrast, 18 U.S.C. § 3231 (1948), as it ostensibly has been read since 1948, asserts: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States. Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof." (18 U.S.C. § 3231).

So, 18 U.S.C. § 3231 purported to assign federal courts with jurisdiction over ALL federal crimes, while its predecessor statutes, which it was supposed to replace, provided **federal courts jurisdiction over crimes in Title 18 alone**. See *U.S. v. Sasscer*, 558 F.Supp. 33, 36 (DC Md., 1982) :

"In the light of the legislative history and the plain meaning of the word "all" in new (as of 1948) 18 U.S.C. § 3231, it is clear that that statute confers jurisdiction in federal district courts to "cases involving ALL offenses against the laws of the United States" (**emphasis added**) regardless of whether the case involved violations of a crime set forth in Title 18 or in some other title of the United States Code such as Title 26, Title 8, or Title 21. In *United States v. Spurgeon*, No. Cr 81-0-19 (D.Nev. Sept. 8, 1981), the same contention raised herein by defendant was posed in support of a motion to dismiss filed by the defendant in that case. That motion was denied by Chief Judge Urbom. In turn, that denial was affirmed in *United States v. Spurgeon*, 671 F.2d 1198 [,1199] (8th Cir. 1982) (per curiam), in which the Eighth Circuit wrote: "**Although it is true federal courts are courts of limited jurisdiction, 18 U.S.C. § 3231 provides that district courts "have original jurisdiction ... of all offenses against the laws of the United States," including the crime [26 U.S.C. 7203] of which- Spurgeon was convicted."** (**end quote** *U.S. v. Sasscer*)

### D.  SIMILAR ARGUMENT INVALID

In 2006 and 2007, in dozens of federal courts, many pro se persons have put forward an argument with its ultimate claim defective related to the instant petition: They claim the invalidity of Title 18 due to errors in the passage of H.R. 3190/P.L. 80-772. **BUT THIS INSTANT PETITION IS NOT THAT ARGUMENT!**

Nevertheless, some courts have come to erroneous conclusions, even about that other, defective argument. See, e.g., *U.S. v. Harbin*, 2007 U.S. Dist. LEXIS 45932 (June 25, 2007) :

"Moreover, as noted by Judge Kazen and other courts, see, e.g., *United states v. Risquet*,

426 F.Supp.2d 310, 311-312 (E.D.Pa.2006), even if the 1948 amendment to Title 18 were defective, this Court would nonetheless retain jurisdiction over Harbin's case because the predecessor 'statute to § 3231 also provides for such jurisdiction." (end quote *U.S. v. Harbin*).  The court's erroneous decision also failed to note that the prior statute in 1940 (18 USC section 546) **was repealed as a matter of the statutes in 1948.**

It should now be clear WHY the *Harbin* decision, and the *Risquet* decision are faulty, rendering their rulings invalid as a matter of law: Contrary to their very brief assumption, that the "predecessor statute" doesn't provide for jurisdiction over crimes in Titles 8, 21, 26, etc. And secondly, even if the predecessor statute would supply general criminal jurisdiction over crimes in Title 18, any such Title 18 criminal statute ostensibly existing in 1948 **was NOT recodified**, so charges citing such a statute after June 25, 1948 were fatally defective.  Further, the court could not obtain jurisdiction under the prior statute due to the Fair Warning Doctrine.

*Risquet's* (erroneous) conclusion, supra, has also been cited by *U.S. v. Felipe*, 2007 U.S. Dist. LEXIS 43520 (E.D. Pa. June 14, 2007); *U.S. v. Irizarry*, 2007 U.S. Dist. LEXIS 42050 (June 8, 2007); *Little v. Levi*, 2007 U.S. Dist. LEXIS 88019 (E.D. Pa. Nov. 29, 2007); *Goodman v. Levi*, 2007 U.S. Dist. LEXIS 87611 (E.D. Pa. Nov 28, 2007); *Sainsbury v. Levi*, 2007 U.S. Dist. LEXIS 84828 (E.D. Pa. Nov 19, 2007); *Bledsoe v. Levi*, 2007 U.S. Dist. LEXIS 84403 (E.D. Pa. October 29, 2007); *Charles v. Levi*, 2007 U.S. Dist. LEXIS 84415 (E.D. Pa. Oct 29, 2007); *U.S. v. McCuiston*, 2007 U.S. Dist. LEXIS 67467 (S.D. Tex. Sep 12, 2007), and other cases.

***In other words, the pro-se petitioners bringing those cases have been blindly copying defective arguments, and in turn the courts have been blindly copying defective***

*opinions*. ***Since this is only a quorum argument***, it has no relation to the prior

arguments, and is a challenge related to a violation of the Constitution, which requires a

quorum to be present for the passage of any valid law.

### E.  <u>INDIVIDUAL CRIMINAL STATUTES NOT RECODIFIED</u>

The non-identical passage of H.R. 3190 is a major defect of Constitutional

proportions. As was stated in *Clinton v. City of New York*, 524 US 417, 448, 141 L.Ed.2d

393, 420 (1998):

***"The Balanced Budget Act of 1997 is a 500-page document that became 'Public Law***
***105-33' after three procedural steps were taken: (1) a bill containing its exact text was***
***approved by a majority of the members of the House of Representatives; (2) the Senate***
***approved precisely the same text; and (3) that text was signed into law by the President.***
***The Constitution explicitly requires that each of those three steps be taken before a bill***
***may 'become a law'. Art. I, 7. If one paragraph of that text had been omitted at any one***
***of those three stages, Public Law 105-33 would not have been validly enacted."***
***(end quote Clinton v. N.Y.C).***

H.R. 3190 (1948) was of similar size: 450 pages. The Senate voted on their own as-

amended version of the bill, which it called "H.R. 3190", and the President apparently

signed the Senate's as-amended version of the bill. But, in 1947 the House only voted on

its original pre-Senate-amendment version of the bill (which the Senate never voted on),

and it did so without the constitutionally-required quorum being present. A year later the

House voted solely to "concur[]" with the amendments.  **No complete House vote ever**

**occurred.**

It is easy to verify that on June 18, 1948, the House only voted on the amendments.

House rules required that any bill to be voted on be read prior to the vote: The text that is

being read is what is to be voted on. While that reading may be waived by consent of the chamber (on long bills, for instance), in the case of the House voting on the amendments to H.R. 3190 that was not done. See 94 Cong. Rec. 8864-65: Only the two pages of amendments themselves were read, and written into the Congressional Record. *So, we know that the vote was intended to be solely on those amendments, not on the full bill. What was approved in the House's subsequent vote were the amendments alone.*

### F.  LONGEVITY INEFFECTIVE TO PASS BILL

**Longevity cannot make a statute valid**. *Brennan v. U.S. Postal Service*, 439 US 1345, 1347, 58 L.Ed.2d '51, 54 (1978). *Independent Insurance Agents v. Clarke*, 965 F.2d 1077, 1078 (B.C. Cir. 1992) (concurrence by Sentelle):

*"The question is not how long the parties assumed a certain state of law, but whether the state of law is merely an assumption. The passage of time, the acquiescence of the parties, the assumptions of officials, even all taken together cannot enact a statute. Legislation only comes into existence through bicameral congressional enactment and presentment to the President of the United States.* U.S. Const. Art. 1, § 1 and 7, c. 2 & 3; *INS v. Chadha*, 462 US 919, 94.6, 77 L.Ed.2d 317, 103 S.Ct. 2764 (1983)." (end quote *Independent Insurance v. Clarke*)

### G.  JUDICIAL NOTICE

Federal Rule of Evidence 201(d) requires a court to take judicial notice if requested by a party and supplied with the necessary information. The courts take judicial notice of matters relating to the composition and proceedings of legislative bodies. *Wallace v. U.S.*,

258 US 296, 66 L.Ed.626 (1922); *O'Gorman & Young, Inc. v. Hartford Fire Insurance Co.*, 282 US 251, 75 L.Ed. 324 (1931). Invalidity of a statute may be shown by things which will be, or by fact established by evidence. *Weaver v. Palmer Bros. Co*, 270 US 402, 70 L.Ed. 654 (1926).**Petitioner requests the Court to take judicial notice of the United States Constitution, the Congressional Record, the proceedings, legislative journals, and the enrolled and engrossed bills with their relevant dates of the 80th Congress.**

## H.    THIS COURT IS OBLIGED TO ACCEPT AND ADJUDICATE THIS CASE

As stated in *New Orleans Pub. Serv. v. New Orleans*, 491 US 350, 358, 105 L.Ed.2d 298, 310 (1989) :

"Our cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred. For example: "***We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution***." *Cohens v. Virginia*, 6 Wheat 264, 404, 5 L.Ed. 257 (1821). '[T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction'" *Chicot County v. Sherwood*, 148 US 529, 534, 37 L.Ed. 546 (1893) (citations omitted. "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction. ... The right of a party plaintiff to

48

choose a Federal court where there is a choice cannot be properly denied." *Willcox v.*

*Consolidated Gas Co.* 212 US 19, 40, 53 L.Ed. 382 (1909) (citations omitted).

Underlying these assertions is the undisputed constitutional principle that Congress, and

not the judiciary, defines the scope of federal jurisdiction within the Constitutionally

permissible bounds. *Kline v. Burke Construction Co.*, 260 US 226, 234, 67 L.Ed. 226

(1922) . " (end quote *New Orleans Pub. Serv.*)

And, as stated in *INS v. Chadha*, 462 US 919, 944, 77 L.Ed.2d 317 (1983):

"The Court's duty in these cases, as Chief Justice Marshall declared in *Cohens v.*

*Virginia*, 6 Wheat 264, 404, 5 L.Ed. 257 (1821) is clear: 'Questions may occur which we

would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best

judgment, and conscientiously to perform our duty.'" (end quote *INS v. Chadha*)

## I.   <u>THIS COURT IS OBLIGED TO INVESTIGATE ITS JURISDICTION</u>

According to *Steel Co. v. Citizens for a Better Environment*, 523 US 82, 94, 140

L.Ed.2d 210, 227 (1998):

"'*Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction*

*is power to declare the law, and when it ceases to exist, the only function*

*remaining to the court is that of announcing the fact and dismissing the case.*'

*Ex Parte McCardle*, 7 Wall 506, 514, 19 L.Ed. 264 (1869). '*On every writ of*

*error or appeal, the first and fundamental question is that of*

*jurisdiction, first, of this court, and then of the court from which the*

*record comes. This question the court is bound to ask and answer*

*for itself, even when not otherwise suggested, and without respect to*

*the relation of the parties to it."* Great Southern Fire Proof Hotel Co. v.
*Jones*, supra [177 US 449] at 453, 44 L.Ed. 842, 20 S.Ct. 690 [(1900)]. The
requirement that jurisdiction be established as a threshold matter springs from the
nature and limits of the judicial power of the United States and is 'inflexible and
without exception.' *Mansfield, C. & L.M.R. Co. v. Swan*, 111 US 379, 382, 28
L.Ed. 462, 4 S.Ct. 510 (1884)." (end quote *Steel Co. v. Citizens*)

*Steel Co.*, supra, at 227 continues:

""'[E]very federal appellate court has a special obligation to 'satisfy itself not
only of its own jurisdiction, but also that of the lower courts in a court under
review,' even though the parties are prepared to concede it. *Mitchell v. Maurer*,
293 US 237, 244, 79 L.Ed. 338, 55 S.Ct. 162 (1934). See *Juidice v. Vail*, 430 US
327, 331-332, 51 L.Ed.2d 376, 97 S.Ct. 1211 (1977) (standing). '*And if the
record discloses that the lower court was without jurisdiction this court will
notice the defect, although the parties make no contention concerning it.* [When
the lower federal court] lack[s] jurisdiction, we have jurisdiction on appeal, not of
the merits but merely for the purpose of correcting the error of the lower court in
entertaining the suit.' *United States v. Corrick*, 298 US 435, 440, 80 L.Ed. 1263,
56 S.Ct. 829 (1936) (footnotes omitted).'" *Arizonans for Official English v.
Arizona*, 520 US 43, 73, 137 L.Ed.2d 170, 117 S.Ct. 1055 (1997), quoting *Bender
v. Williamsport Area School Dist.*, 475 US 534, 541, 89 L.Ed.2d 501, 106 S.Ct.
1326 (1986) (brackets in original)." (end quote *Steel Co. v. Citizens*)

## J.  THIS COURT MUST COGNIZE AND CORRECT THIS ERROR

The Supreme Court has decided that questions about the validity of passage of a bill in Congress can and must be cognized if a Constitutional or rights issue exists. *U.S. v. Munoz-Flores*, 495 US 385, 109 L.Ed.2d 384, 395, n.4 (1990) stated:

"In the absence of any constitutional requirement binding Congress, we stated that '[t]he respect due to coequal and independent departments demands that the courts accept as passed all bills authenticated in the manner provided by Congress [*Marshall Field v. Clark*, 143 US 649] at 672, 36 L.Ed. 294 [(1892)]. ***Where, as here, a constitutional provision IS implicated, Field does not apply.***"

(end quote *Munoz-Flores*, emphasis in original converted to capitals)

*Yellin v. U.S.*, 374 US 109, 114, 10 L.Ed.2d 778, 783 (1963) held:

***"It has been long settled, of course, that rules of Congress and its committees are judicially cognizable***. *Christoffel v. U.S.*, 338 US 84, 93 L.Ed. 1826, 69 S.Ct. 1447; *U.S. v. Smith*, 286 US 6, 76 L.Ed. 954, 52 S.Ct. 475; *U.S. v. Ballin*, 144 US 1, 36 L.Ed. 321, 12 S.Ct. 507. And a legislative committee has been held to observance of its rules, *Christoffel v. U.S.*, supra, just as, more frequently, executive agencies have been. See, e.g., *Vitarelli v. Seaton*, 359 US 535, 3 L.Ed.2d 1012, 79 S.Ct. 968; *Service v. Dulles*, 354 US 363, 1 L.ed.2d 1403, 77 S.Ct. 1152."

(end quote *Yellin v. U.S.*)

*U.S. v. Ballin*, 144 US 1, 5, 36 L.Ed. 321, 324-25 (1892) stated:

"The Constitution empowers each house to determine its rules of proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights, and there should be a reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained." (end quote *U.S. v. Ballin*).

For a House of Congress to do legislative business, a quorum must be present. See *Ballin,*. supra, 144 US at 9, 36 L.Ed. 321, 326 (1892) :

***"This law is found in the Secretary of State's office, properly authenticated. If we appeal to the journal of the House, we find that a majority of its members were present when the bill passed, a majority creating by the Constitution a quorum, with authority to act upon any measure; that the presence of that quorum was determined in accordance with a valid rule theretofore adopted by the House; and that of that quorum a majority voted in favor of the bill. It therefore legally passed the House, and the law as found in the office of the Secretary of State is beyond challenge."*** (end quote *U.S. v. Ballin*)

From *U.S. v. Smith*, 286 US 6, 76 L.ed. 954 (1932):

"As the construction to be given to the rules affects persons other than members of the Senate, the question presented is of necessity a judicial one." (end quote *U.S. v. Smith*).

### K. __MARSHALL FIELD v. CLARK DOES NOT CONTROL THIS CASE__

*Marshall Field v. Clark*, 143 US 649, 36 L.Ed. 294 (1892) involved a revenue

bill, H.R. 9416 (1890). The House and Senate passed identical versions of the bill:

For purposes of illustration, the bill as voted on contained two joined blocks of

text, call them "(A)" and " (B)". Both the House and the Senate voted for the

ENTIRE bill, "(A)+(B)". However, and presumably due to an oversight, the

House and Senate leadership "examined" and "signed" (certified) only a portion

of this text: "(A)", NOT "(A)+(B)". The bill was then sent to the U.S. President as

"(A)", not "(A)+(B)", and he signed it, apparently into law, as "(A)", not

"(A)+(B)"

Congress had not actually voted on JUST "(A)", ALONE. But they had voted for

every portion of "(A)", albeit only in combination with part " (B)". So, *Marshall*

*Field* did not involve facts in which an allegedly-passed bill contained parts never

approved by both chambers of Congress.

For example, suppose the Senate votes for a bill, "(C)+(D)", and the House votes

solely for "(C)". Suppose it is examined and signed, by the House and Senate

leadership, as "(C)", and is delivered to the U.S. President as "(C)" and signed by

him as such. This fits the facts of Marshall Field, and until recently, (1990),

*Marshall Field* would presumably have controlled.

But suppose, instead, the Senate votes for a bill, "(C)+(D)", and the House votes

solely for "(C)", but the House and Senate leadership examine and sign it as

"(C)+(D)". It is then delivered to the U.S. President as "(C)+(D)", and signed as

such. In THAT situation, the resulting alleged law contains a portion, "(D)", which was never approved by the House, even as a portion of a bill. *Marshall Field* simply does not apply to the latter situation.

As stated in *Marshall Field* itself, 143 US 672, 673 :

"It is said that, under any other view, it becomes possible for the Speaker of the House of Representatives and the President of the Senate to impose upon the people as a law a bill that was never passed by Congress. But this possibility is too remote to be seriously considered IN THE PRESENT INQUIRY."

(end quote *Marshall Field*; emphasis supplied)

A search of Supreme Court cases shows that the term, "present inquiry" means the instant case. In other words, in *Marshall Field* the Supreme Court specifically disclaimed addressing such a possibility, the possibility that a bill would become a law that had not been passed by both the House and the Senate. So that opinion cannot control a situation where the alleged law contains portions of text not agreed to by BOTH the House and Senate. It is important to remember that *Marshall Field* never expressed approval of, and it specifically disapproved, the possibility of a bill containing parts not approved by BOTH houses of Congress.

Regarding 'dicta', as stated in *Cohens v. Virginia*, 5 L.ed. 257, 290, 6 Wheat 264, 399-400 (1821) :

"The counsel for the defendant in error urge, in opposition to this rule of construction, some dicta of the court, in the case of *Marbury v. Madison*. It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go

beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reasons for this maxim are obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." (end quote *Cohens v. Virginia*).

So any decision beyond that which was necessary to agree with the specific facts of *Marshall Field* were not, explicitly or implicitly, decided in *Marshall Field*. The rest is called "dicta". As stated in *Cooper Industries v. Aviall Services*, 543 US 157, 170, 160 L.Ed.2d 548, 562 (2004) :

"Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents. *Webster v. Fall*, 266 US 507, 511, 69 L.Ed. 411 (1925) . " (end quote *Cooper Industries*)

Accord *U.S. v. Shabani*, 513 US 10, 16, 130 L.Ed.2d 225, 231, citing *Illinois Bd. of Elections v. Socialist Workers Party*, 440 US 173, 183, 59 L.Ed.2d 230 (1979). Therefore, *Marshall Field* is dicta regarding the larger question of whether the certification of a bill by the Senate and House leadership can avoid the scrutiny of courts if that purportedly-passed bill contains portions never approved by both the House and Senate.

Another reason that *Marshall Field* does not apply is by its own terms:  the bill must be signed by the Speaker of the House and President pro tempore of the Senate "in open session".  The bill was not signed in "open session", on June 22 and June 23, 1948, after Congress had fully adjourned *sine die* on June 20, 1948 at 7 AM.

## L.  *CLINTON v. N.Y.C.* AND *MUNOZ-FLORES* OVERTURN  OR DISTINGUISH MARSHALL FIELD

According to *Agostini v. Felton*, 521 US 203, 138 L.Ed.2d 391, 422 (1997) :

"The doctrine of *stare decisis* does not preclude us from recognizing the change in our law and overruling *Aguilar* and those portions of Ball inconsistent with our more recent decisions. As we have often noted, "[s]tare decisis is not an inexorable command," *Payne v. Tennessee*, 501 US 808, 828, 115 L.Ed.2d 720 (1991), but instead reflects a policy judgment that "in most matters it is more important that the applicable rule of law be settled than that it be settled right." *Burnet v. Coronado Oil & Gas Co.*, 285 US 393, 406, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting). That policy is at its weakest when we interpret the Constitution because our interpretation can be altered only by constitutional amendment or by overruling our prior decisions. *Seminole Tribe of Fla v. Florida*, 517 US 44, 63, 134 L.Ed.2d 252 (1996); *Payne* supra, at 828, 115 L.Ed.2d 720; *St. Joseph Stock Yards Co. v. United States*, 298 US 38, 94, 80 L.Ed. 1033 (1936) (Stone and Cardozo, JJ., concurring in result) ("The doctrine of *stare decisis* ... has only a limited application in the field of constitutional law"). Thus, we have held in several cases that *stare decisis* does not prevent us from overruling a

previous decision where there has been a significant change in, or subsequent

development of, our constitutional law. *U.S. v. Gaudin*, 515 US 506, 521, 132

L.Ed.2d 444 (1995) *(stare decisis* may yield where a prior decision's

"underpinnings [have been] eroded, by subsequent decisions of this Court");

*Alabama v. Smith*, 490 US 794, 803, 104 L.Ed.2d 865 (1989) (noting that a "later

development … of constitutional law"

is a basis for overruling a decision; *Planned Parenthood of Southeastern Pa. v.*

*Casey*, 505 US 833, 857, 120 L.Ed.2d 674 (1992) (observing that a decision is

properly overruled where "development of constitutional law since the case was

decided has implicitly or explicitly left [it] behind as a mere survivor of obsolete

constitutional thinking"). (end quote *Agostini v. Felton*)

Did *Clinton v. City of New York*, and *U.S. v. Munoz-Flores*, together, overturn

*Marshall Field* on *Marshall Field's* own, original facts? Yes. To understand this,

it is merely necessary to apply *Clinton v. City of New York's* 3-part test, and

determine how the *Marshall Field* original facts would be treated.  In the facts of

*Marshall Field*:

The House passed a given text: "(A)+(B)".

The Senate passed the identical text: "(A)+(B)".

However, the U.S. President signed a DIFFERENT bill,text "(A)", NOT text

"(A)+(B)".

In 1892, in *Marshall Field v. Clark*, the Supreme Court declared that this discrepancy

was acceptable: "(A)" was law. But in 1998, by the combination of *Clinton v. City of*

*New York* and *U.S. v. Munoz-Flores* (1990), supra, the Supreme Court declared ***those***

*events to be __UNACCEPTABLE__, and incompatible with a validly-passed law.*

In other words, on *Marshall Field's* own facts, the Supreme Court had changed its mind. This, the Supreme Court has every right to do. And it is by no means surprising that such an overturn would occur 106 years later: The Supreme Court has been known to change its mind, over a far shorter period. For instance, *Lawrence v. Texas*, 156 L.Ed.2d 508 53 (2003) overturned *Bowers v. Hardwick*, 92 L.Ed.2d 140 (1986) (17 years). *Almendarez-Torres* (1998) was either overturned or severely limited by *Apprendi v. New Jersey* (2000), *Blakely v. Washington* (2004), and *U.S. v. Booker* (2005). (2, 6, and 7 years). *Furman v. Georgia*, 408 US 238, 312 (1972) was effectively overturned by a series of opinions approving of various States' death penalty laws passed since *Furman*, for example *Jurek v. Texas*, 428 US 262, 49 L.Ed.2d 929 (1976) (4 years). *Brown v. Board of Education*, 349 US 294, 99 L.Ed. 1083 (1955) overturned *Plessy v. Ferguson*, 163 US 537, 41 L.Ed. 256 (1896) ("separate but equal"). (59 years). *Bruton v. U.S.*, 391 US 123, 20 L.Ed.2d 476 (1968) overturned *Belli Paoli v. U.S.*, 352 US 232, 1 L.Ed.2d 278 (1957) (11 years); *Monell v. New York City*, 436 US 658 (1978) overturned *Monroe v. Pape*, 365 US 167 (1961) (17 years); *Boys Market, Inc. v. Retail Clerks*, 398 US 235 (1970) overturned *Sinclair Refining v. Atkinson*, 370 US 195 (1962) (8 years); *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 US 36 (1977) overturned *U.S. v. Arnold, Schwinn & Co.* 388 US 365 (1967) (10 years).

## M. MARSHALL FIELD IS OVERTURNED ON ITS OWN FACTS, BUT LIVES ON IN DICTA INAPPOSITE HERE

This overturn does not mean, and does not require, that *Marshall Field* be considered totally defunct. In fact, even though *Marshall Field* was overturned

**ON ITS OWN ORIGINAL FACTS**, some of its dicta appears to live on in regards to bills passed in Congress where the passage is flawed by NON-Constitutional errors. See footnote 4 in *Munoz-Flores*, supra.

***But, as that footnote states, if the error IS of Constitutional magnitude, then "Marshall Field does not apply".***

The Supreme Court expresses a principle that it reserves for itself the power to overturn its own precedents. See *Rodriguez de Quijas v. Shearson/Am. Exp*. 490 US 477, 484, 104 L.Ed.2d 526, 536-37 (1989). But given that the Supreme Court has made over 10,000 decisions, it can't be expected that the Supreme Court will anticipate every possible fact combination and circumstance, and explicitly list all potentially-overturned or limited precedents. So, it directs lower courts to employ **ALL OF ITS DECISIONS**, simultaneously, unless in a given fact situation a later decision cannot be reconciled with a former decision. In that case, the lower court must accept the later decision as having overturned the former, on those facts. The lower courts have repeatedly been warned by the Supreme Court not to overturn its precedents.

So *Munoz-Flores and Clinton v. City of New York*, together, overturned *Marshall Field*, on *Field's* own facts, and thereby limited its application to errors not of Constitutional magnitude.

**N. PETITIONER'S INSTANT CHALLENGE REQUIRES APPLICATION OF *CLINTON V. CITY OF NEW YORK* AND *MUNOZ-FLORES*, NOT *MARSHALL FIELD***

Petitioner alleges that on May 12, 1947, a sub-quorum (fewer House members were present than required for a quorum) voted "for" a bill which they had just amended. The bill was labeled "H.R. 3190". That vote was **constitutionally meaningless,** however, because a quorum (defined in Article II as a majority of the membership of the Congress) was not present. Thus, it would not be correct to say the House "passed" H.R. 3190, at that point, since without a quorum the Congress cannot do legislative business. Let's call the text they voted "for", "(A)".

Over a year later, June 18, 1948, the Senate took what was presumably the same text, "(A)", and without voting on its final passage, voted first to amend it: Let's call the as-Senate-amended text "(B)". The Senate then voted for final passage of the bill (which the Senate still labeled as H.R. 3190) containing text "(B)".

That same day, June 18, 1948, the House took its 1947 version of the bill, containing text "(A)", which it still labeled as "H.R. 3190", and also took the Senate's amendments of that day, and the House voted to "concur with the [Senate's] amendments": In other words, the House agreed that it would amend its own version of H.R. 3190, "(A)", to conform exactly to text "(B)", the text identical to the version the Senate had just formed and passed that day.

But critically, the House did not take the necessary next step, and vote to approve the newly-created version, containing text "(B)", for final passage. Nor had the House ever approved, as a bill for final passage, and WITH a quorum, the version

of H.R. 3190 with text "(A)", either in 1947 nor 1948. And the House had not voted, with a quorum, for final passage the text of "(B)".

The requirement that Congress must have a 'quorum' present to do legislative business comes from the U.S. Constitution. Similarly, as held by *Clinton v. City of New York*, supra, the Constitution requires that to be properly enacted into law, a bill be identically passed by both the House and Senate, and then signed in identical form by the U.S. President. Since the requirement comes from the Constitution, and not merely the Congress' rules, *U.S. v. Munoz-Flores*, note 4, held that "Marshall Field does not apply". This court, and no court, can refuse to address this fault by employing *Marshall Field* because if they did, it would be both a **violation of the oath of office to uphold the constitution as well as a breach of the constitution.**

## R.     MARSHALL FIELD DID NOT CONTROL THIS CASE FROM 1948 THROUGH 1989

*Marshall Field v. Clark* would not have controlled the question of the validity of passage of H.R. 3190 in 1947-48, even prior to *Clinton v. City of New York* and *Munoz-Flores*. **Since the House never voted for final passage**, WITH a quorum of either text "(A)" or text "(B)", *Marshall Field* would have been inapposite.

To be sure, those who would have argued (pre-*Clinton v. NYC* and *Munoz-Flores*) 'for' the valid passage of H.R. 3190 (1948) would have noted the dicta of *Marshall Field*, and they would have mechanistically applied the 'rule' that what the leadership certifies is presumed valid, and they would declare that the U.S. President signed bill "(B)" after the

House and Senate leadership certified text "(B)". But that was mere dicta, in the facts of H.R. 3190.

A more careful and COMPLETE study of the rest of the dicta of *Marshall Field* would show that *Marshall Field* did not involve a situation where the final, as-ostensibly-passed law, contained any parts not passed by both the House and the Senate, and would note that the Supreme Court specifically disapproved of a situation where a bill becomes law without the approval of **both the House and the Senate**. So, *Marshall Field* couldn't "control" the issue, and in fact the full dicta would militate AGAINST the conclusion that H.R. 3190 had been approved in 1948, in any form. So, it would have been an 'issue of first impression', between 1948 and 1989, and the appeals courts would have had to decide how to treat an error which was **UNLIKE** that of *Marshall Field's* facts. But after 1998, that was no longer possible. As a product of *Munoz-Flores* and *Clinton v. City of New York* (1998), the Supreme Court has explicitly declared that for a bill to become valid law, it must be identically passed by the House and the Senate, and signed in identical form by the U.S. President: ***"H.R. 3190" was never passed by the House of Representatives, in ANY form; that error was of constitutional magnitude; and the courts cannot employ Marshall Field to refuse to decide the question.*** The lack of a House of Representatives approval, WITH a quorum, means that H.R. 3190 was never validly passed by Congress, and it did not become law with President Truman's signature.

The further issue is that the bill, whichever it was, was signed by the Speaker of the House and President of the Senate on June 22 and June 23, 1948, when Congress was

completely and fully adjourned sine die as of June 20, 1948 at 7 AM. Therefore, no

quorum was in session when the representatives of Congress signed the bill, rendering the

bill invalid and illegal.

## S.     A "CONVICTION" BASED ON AN INVALID STATUTE IS VOID

From *Ex Parte Siebold*, 100 US 371, 374, 25 L.Ed. 717, 718 (1880) :

"...we are clearly of opinion that the question raised in the cases before us is proper for

consideration on habeas corpus. The validity of the judgment is assailed on the ground

that the Acts of Congress under which the indictments were found are unconstitutional. If

this position is well taken, it affects the foundations of the whole proceedings. **An**

**unconstitutional law is void, and is as no law. An offense created by it is**

**not a crime. A conviction under it is not merely erroneous, but it is**

**illegal and void and cannot be a legal cause of imprisonment."** (end quote

*Ex Parte Siebold*).

*Ex Parte Yarbrough*, 110 US 651, 653, 28 L.Ed. 274, 274 (1884) held:

**"...it is equally well settled that when a prisoner is held under the**

**sentence of any court of the United States in regard to a matter wholly**

**beyond or without the jurisdiction of that court, it is not only within the**

**authority of the Supreme Court but it is its duty to inquire into the**

**cause of commitment when the matter is properly brought to its**

**attention, and if found to be as charged, a matter of which such court**

**had no jurisdiction, to discharge the prisoner from confinement.** *Ex Parte*

*Kearney*, 7 Wheat, 38, *Ex Parte Well*, 18 How, 307 [59 US, XV], 421]; *Ex Parte Lange*,

18 Wall, 163 [85 US, XXI. 872]; *Ex Parte Parks*, 93 US, 18 [XXIII, 787]."

(end quote *Ex Parte Yarbrough*)

## T.    A VOID JUDGMENT IS A LEGAL NULLITY

As stated by *Vallely v. Northern F. & M. Ins. Co.*, 254 US 348, 353-54, 65 L.Ed. 297,

300 (1920):

"Courts are constituted by authority, and they cannot go beyond the power delegated

to them. If they act beyond that authority, and certainly in contravention of it, their

judgments and orders are regarded as ***nullities***. They are not voidable, but simply

*void*, and this even prior to reversal. *Elliot v. Peirsol*, 1 Pet. 328, 340, 7 L.Ed. 164,

170; *Old Wayne Mut. Life Asso. v. McDonough*, 204 US 8, 51 L.Ed. 345 [(1907)]."

(end quote *Vallely v. Northern*)

Old Wayne, supra, 204 US at 16, 51 L.ed. at 348 stated: "Chief Justice Marshall had

long before observed in *Rose v. Himely*, 4 Cranch, 241, 269, 2 L.Ed. 608, 617, that,

upon principle, the operation of every judgment must depend on the power of the

court to render that judgment. In *Williamson v. Berry*, 8 How 495, 540, 12 L.Ed.

1170, 1189 [(ca. 1805)], it was said to be well settled that the jurisdiction of any court

exercising authority over a subject "may be inquired into in every other court when

the proceedings in the former are relied upon and brought before the latter by a party

claiming the benefit of such proceedings," and that rule prevails whether "the decree

or judgment has been given in a court of admiralty, chancery, ecclesiastical court, or

court of common law, or whether the point ruled has arisen under the laws of nations,

the practice in chancery, or the municipal laws of states." (end quote *Old Wayne v. McDonough*)

According to *Long v. Shorebank Development Corp*, 182 F.3d 548, 561 (7th Cir. 1999):

**"A void judgment [includes] judgment entered by a court which lacks jurisdiction over the parties or the subject matter, or lacks inherent power to enter the particular judgment or an order procured by fraud, can be attacked at any time, in any court, either directly or collaterally, provided that the party is properly before the court."** (end quote *Long v. Shorebank*)

*A "void judgment" cannot become "final", as it is a legal nullity.* A judgment which is *void* can be (wrongly) BELIEVED to be "final", for a time, but that does not protect that judgment from attack based on its *voidness.* **To conclude otherwise would amount to declaring that courts' mere belief that the statute is valid makes that statute valid, which amounts to a self-fulfilling prophecy.**

Void judgments are those rendered by a court which lacked jurisdiction, either of the subject matter or the parties", *Wahl v. Round Valley Bank*, 38 Ariz 411, 300 P. 955 (1931); *Tube City Mining and Milling Co. v. Otterson*, 16 Ariz. 305, 146 P. 203 (1914); and *Milliken v. Meyer*, 311 US 457, 85 L.Ed. 278 (1940) .

**A void judgment is one which, from its inception, was a complete nullity and without legal effect**, *Holstein v. City of Chicago*, 803 F.Supp. 205

(N.D. Ill 1992), affirmed.29 F.3d 1145 (7th Cir. 1994). **A void order may be attacked, either directly or collaterally, at any time**, *In Re Estate of Steinfeld*, 630 N.Ed.2d 801, cert. den. sub nom Steinfeld v. Hoddick, 513 US' 809, 130 L.ed.2d 17 (1994) .

*Fritts v. Krugh*, Supreme Court of Michigan, 92 N.W.2d 604, 354 Mich 97 stated:

"A 'void' judgment, as well all know, grounds no rights, forms no defense to actions taken thereunder, and is vulnerable to any manner of collateral attack. **No statute of limitations or repose runs on its holdings, and the matters though to be settled thereby are not res judicata, and years later, when the memories may have grown dim and rights long been regarded as vested, any disgruntled litigant may reopen the old wound and once more probe its depths. And it is then as though trial and adjudication had never been."**

(end quote Fritts v. Krugh) *B & C Investments, Inc. v. F & M Nat. Bank and Trust*, 903 P.2d 339 (Okla App. Div. 3, 1995) held:

"Decision is void on the face of the judgment roll when from four corners of that role, it may be determined that at least one of three elements of jurisdiction was absent: jurisdiction over the parties, jurisdiction over the subject matter, or jurisdictional power to pronounce particular judgment that was rendered."

(end quote *B & C Investments*).

## U.    THERE IS NO TIME LIMIT ON ATTACK ON VOID JUDGMENT

*Austin v. Smith*, 312 F.3d 343 (D.C. Cir. 1962) held:

"Moreover, the Rule [60(b)] places no time limit on an attack upon a void judgment,

nor can such a judgment acquire validity because of laches on the part of him who

applies for relief form it. 2 Baron & Holtzoff, Federal Practice and Procedure 1327

(1958). We conclude the District Court erred in denying Clarence's motion to vacate

the judgment for $7,000 because it was and is void. The second judgment ordered his

realty sold was and is void because it depended for validity upon a prior judgment. In

our view, Clarence should be relieved from these judgments under Rule 60(b)."

(end quote *Austin v. Smith*)

The district and appeals court did not possess jurisdiction over the merits of the cases.

Therefore, these cases never became 'final' for the purposes of 18 U.S.C. § 2255(1),

and no time bar can be applied.

## V.    COURT HAS NO DISCRETION TO REFUSE TO VACATE A VOID JUDGMENT

*Export v. Reef*, 54 F.3d 1466, 1469 (9th Cir. 1995) held:

"We review de novo, however, a district court's ruling upon a Rule 60(b)(4) motion

to set aside a judgment as void, because the question of the validity of a judgment is a

legal one. *Retail Clerks Union Joint Pension Trust v. Freedom Food Center, Inc.* 938

F.2d 136, 137 (9th Cir. 1991)." (end quote *Export Group v. Reef Ind.*)

*Orner v. Shalala*, 30 F.3d 1307 (10th Cir. 1994) held that "when the rule providing

for relief from a void judgment is applicable, relief is not discretionary, but is

**mandatory.**"

*Jaffe v. Van Brunt*, 158 F.R.D. 278 (S.D.N.Y. 1994) held: "Judgments entered where courts lack either subject matter jurisdiction, or that were otherwise entered in violation of due process of law, must be set aside." (end quote *Jaffe*).

## W.    PRAYER FOR RELIEF

Comes now, Harry Edwin Miles, and class action plaintiffs named herein, and move the court to declare them actually innocent of any crimes charged by the government, as the statutes used by the government in each case related to such a plaintiff and unconstitutional as a matter of law, since no quorum existed on May 12, 1947 when the House voted on Public Law 80-772, and all actions after that vote were illegal, and no quorum existed on June 22 and June 23, 1948, when the Speaker of the House and President pro tempore of the Senate signed the alleged bill.  Both actions, or either action, render the bill unconstitutional and void ab initio.

Plaintiffs request a declaration of actual innocence for each person listed as Plaintiff.

Signed, _____ Dated,_____

Harry Edwin Miles

**Victorville Medium FCI.**

**Reg. No. 17768-112**

**P.O. Box 5300**

**Adelanto, CA 92301.**

CLASS ACTION PLAINTIFFS

| Last Name | First Name | Middle | Registration or Contact |
|---|---|---|---|
| Abreau | Marilyn | | 59012-066 |
| Acosta | Mario | | 47139-079 |
| Al-Haj | Ahmed | | 14558-031 |
| Aldridge | Michael | | 39950-060 |
| Alexander | Michael | | 33454-060 |
| Alexander | Tommy | | 07193-035 |
| Alston | Michael | | 47290-066 |
| Anderson | Jason | | 09487-052 |
| Anderson | Thomas | | 01386-090 |
| Apaez | Arturo | M. | 12816-179 |
| Armstrong | Richard | K. | 20413-298 |
| Arnold | Michael | | Pre-Trial |
| Avila | Gonzalo | | 50633-191 |
| Baines | Joseph | | 77782-004 |
| Beam | Elaine | | pretrial |
| Beltran | Juan | | 20283-045 |
| Benites | Micah | | 57605-180 |
| Bennett | Lucky | | federal district court Hawaii |
| Bernard | David | | 58997-066 |
| Bewig | John | | 25464-044 |
| Blango | James | | 03058-016 |
| Brad | Lester | | 83333-020 |
| Brecher | Mark | | 34463-018 |
| Brewer | Marvin | | to be named |
| Brock | John | F. | 09847-061 |
| Brown | Kardama | Muni | 37903-013 |
| Brown | Brian | | 22812-039 |
| Brown | Dustin | | 14724-026 |
| Brown | Terrell | | 06983-027 |
| Brum | Michael Henry | | 05639-089 |
| Buchanan | Milton | | 08713-424 |
| Buczek | Shane | C. | 90656-111 |
| Buitron | Gabriel | | 96705-080 |
| Burge | Mark | C. | 17437-026 |
| Burston | Curtis | | 24896-056 |
| Caira | Francesco | | 40926-424 |
| Canterbury | Lorene | | 00570-088 |
| Campbell | Harold | | 56311-083 |
| Carney | Sean | M. | 83492-180 |
| Cash | John | D. | 57202-019 |
| Castillo | Pedro | | 20474-424 |
| Cavender | Steven | | 12787-078 |
| Cenobio | Lanz | H. | 15660-112 |
| Chupurdy | Gary | C. | 31758-004 |
| Ciara | Francesco | | 40926-424 |

| | | | |
|---|---|---|---|
| Coates | Kenyatta | | 04031-748 |
| Conrod | Tony | | 12285-042 |
| Cooper | Love | T. | 10903-046 |
| Dade | Damon | | 44108-083 |
| Davis | DeAngelo | | 40642-039 |
| Davis, | Tony | | 678917-080 |
| Davis Jr. | Wyatt | | 94726-071 |
| Dazey | Dennis | | 15169-064 |
| Deandrade | Daniel | | 70206-054 |
| Dedona | Andrew | | 26974-050 |
| Denham | Daniel | | 20593-045 |
| Depew | Jay | L. | 22497-013 |
| Derleth | Bill | | 32394-179 |
| Dethlefs | Gary | | 20177-038 |
| DeYoung | Rulon | | CR-00525-DB |
| Dickerson | Frank | | 13465-083 |
| Dill | Damon | | 56722-066 |
| Douglas | Floyd | | 28919-034 |
| Dudley | William | | 83808-180 |
| Ernst | Carl Michael | | 15281-026 |
| Ernst | Daniel | Carl | #10-CR-60109-AA |
| Evans | Clyde | Dale | 34006-177 |
| Evans | Regina | | 13992-064 |
| Ferguson | Donald | K. | Dist. Of Montana,CR-8-107-BLG-JDS |
| Fitzgerald | Douglas John | | 09342-023 |
| Flanagan | Enrique | A. | 42364-424 |
| Forbes | Calvin | | 58687-053 |
| Frederick | James | | 17333-075 |
| Fuller | Gregory | | 18387-075 |
| Gakoumis | George | | 34971-066 |
| Gardner | Roy | | 20040-077 |
| Garuder | Jana | | Pre-Trial - CR-00525-DB |
| Garuder | John | | Pre-Trial-CR-00525-DB |
| Garza | Rafael | | 37425--013 |
| Gee | Clayton | | 12143-017 |
| Gentile | Dino | | 14711-112 |
| Giddings | Elbert | G. | 52622-280 |
| Gillaspie Sr. | James | | 04537-087 |
| Golden | Danny | | 04219-063 |
| Golden | Ernestine | | 04220-063 |
| Gonzales | Christopher | S. | 32192-177 |
| Griffith | Diane | | 15167-064 |
| Guy | Harold | | 18761-044 |
| Hall | Wainsworh | M. | 28674-054 |
| Hameed | Abdul | | 45569-083 |
| Hardy | Royal | | 83346-022 |
| Harper | Shawn | | 12666-078 |
| Harris | Eric | | 25521-056 |

| | | | |
|---|---|---|---|
| Hartman | David | L. | 32466-013 |
| Hendrickson | David | O. | 16303-081 |
| Herold | Thomas | | 41289-018 |
| Herrera | Francisco | | 20456-179 |
| Herring | Richard | A. | 22009-045 |
| Hill | Eddie | | 21796-424 |
| Hinojosa | Carlos | | 34033-179 |
| Hinton | Greer | | 37258-083 |
| Hinton Jr. | Robert | | 04546-033 |
| Holin | Dawn | | 30609-160 |
| Hood Jr. | George | | 07876-043 |
| Hoskins | David | | 08767-032 |
| Hutchins | Vincent | C. | 21443-034 |
| Jackson | Delores | | 09619-112 |
| James | Earlington | | 35649-208 |
| Jenkins | John | Carl | 42876-048 |
| Jerdine | Anthony | | 64257-004 |
| Johns | Lawrence | | 55592-053 |
| Johnson | Antione | | 36336-060 |
| Johnson | Charles | | 06264-017 |
| Johnson | Melvin | | 39179-037 |
| Jones | Benjamin | | State Case |
| Jones | Emmanuel | | 41305-018 |
| Jones | William | | 24397-044 |
| Julian | Edward | | 36876-060 |
| Kahn | Eddie | | 22719-086 |
| Kalaycioglu | Serdar | | 56304-004 |
| Kangadis | Nick | | 42756-424 |
| Kennedy | Rodney | | 35929-180 |
| Kennedy | Ronald | | 35970-180 |
| Kern | Conrad | | 37902-013 |
| Kraft | Robert | | 55570-054 |
| Kurti | Ibrahim | | 54255-054 |
| Landry | Dante | | 07508-046 |
| Law | Randall | | 13920-424 |
| Lee | Duane | | 29084-086 |
| Levy | Raphael | | 11-20290-CR-Jordan, SDFl |
| Lewis | Sam | | 29063-044 |
| Liner | Howard | E. | 20237-179 |
| Liningham | Gregory | | 60684-080 |
| Long | John | W. | 66289-065 |
| Long | Melvin | | 08776-058 |
| Lorenzo | Steven | | 42413-018 |
| Lothridge | Felipe | | 28848-044 |
| Lugo | Ismael | | 31928-054 |
| Lundell | Terry | | 34185-177 |
| Manke | Norma | | 16096-045 |
| Martin | Kenneth | L. | 29253-179 |

| Martin | Christopher | | 04533-061 |
| Martinez | Francisco | | 40879-053 |
| Martinez | Johnny | | 52655-054 |
| Martinez | Juan | | 44857-019 |
| Martinez | Sonny | | 5768-180 |
| Mashni | Ehmeidi | | 26023-050 |
| Maslanka | Zdzislaw | E. | 55670-004 |
| Matthews | Wayne | | Pre-trial-132102 Montauk Greenfields |
| Mattingly | William | | 04541-088 |
| Mayfield | Eugene | | 14902-424 |
| McCuiston | Brian | | 14835-064 |
| McElveen | Lamont | | 99987-071 |
| McGowan | Jeri | | 13019-171 |
| McGowan | Vadar | | 23025-171 |
| McKinnon | Philip | | Pre case #CR-00366-DKC-1,Dist. Of Md. |
| McReynolds | Marlon | | 06028-028 |
| Meling | Joseph | | 22719-086 |
| Migliaccio | Lance | | 21219-013 |
| Miles | Harry | | 17768-112 |
| Mills | Kevin | | 21396-009 |
| Minor | Ricky | | 05037-017 |
| Mitchell | Duford | | 11492-078 |
| Mitchell | Keyon | | 12073-078 |
| Mitchell | Shannon | | 30065-034 |
| Moderski | Joseph | | 60404-066 |
| Moore | Leon | | 83348-079 |
| Moore | Noah | | 24804-013 |
| Moran | Luke | | 19057-031 |
| Moreno | Jose | R. | 31646-048 |
| Morse | Kevin | | Pre-trial |
| Murray | Michael | | 13867-038 |
| Nance | Melvin E. | | 32269-018 |
| Nance | Corey | | 08332-081 |
| Nosair | El Sayyid | | 35074-054 |
| Nowlin Jr. | David | P. | 05643-063 |
| Olson | Michael | | 11926-041 |
| Ontiveros | Tito | Freddy | 37716-013 |
| Ordonez | Eric | | 89858-022 |
| Orr | David | J. | 10518-081 |
| Ortegon | Jose | | 97297-180 |
| Pappillion | Thaddeus | | Pre-trial |
| Paz | Nicholas | | 56388-066 |
| Perkins | Mary | | 58871-112 |
| Pflum | Gregory | | 15193-031 |
| Pflum | David G. | | 14685-031 |
| Pierce | Darry  I | H. | 05620-067 |
| Pinder | Antonio | | 28610-018 |
| Pinson | Darrell | | 54522-060 |

| | | | |
|---|---|---|---|
| Porter | Nathaniel | D. | 07-0281327 |
| Price | Antwon | Dale | 37959-013 |
| Quezada | Alfredo | | 80361-080 |
| Reid | Les | Roy | 07-cv-118-55,et al |
| Rivas | Jose | | 42832-004 |
| Roberts | Steven | | 66675-061 |
| Romero | Carlos | | 12727-064 |
| Rushing | Elizabeth | | 18715-056 |
| Sagredo | Israel | | 34171-179 |
| Salgado | Dionisio | | 37409-013 |
| Samaniego | Roland | | 43425-180 |
| Sanchez | Edward | | 24356-179 |
| Santistevan | Manuel | | 35633-013 |
| Santistevan | Roman | | 35360-013 |
| Schmidt | Richard | | 47454-083 |
| Scmaltz | Paul | | Pre-trial |
| Senninger | Catherine | | 03717-081 |
| Shelton | David | | 10518-084 |
| Sherrod | Tony | | 08126-018 |
| Siccloff | Edward | | 30860-068 |
| Skaggs | Jess | | 31880-177 |
| Smith | James | | 11722-424 |
| Smith | Kris | | 33951-013 |
| Smith | James | | 11722-424 |
| Smith | Barry | | 29125-034 |
| Smith | Curt | | 18637-047 |
| Smith | Daniel | | 59640-066 |
| Smith | Eddie | | 05479-032 |
| Smith | David | J. | 33385-086 |
| Smith | Jason | | 03014-087 |
| Smith | Mark | | 32418-039 |
| Somerstedt | Reinhold | | Dist. Nevada,LasVegas,CV-00273-BES-GWF |
| Sosa | Jose | | 26679-069 |
| Spry | Gracie | | 06523-088 |
| Spry | Marvin | | 02382-088 |
| States | Charles | | 14965-424 |
| Stewart | Robert | | 04650-081 |
| Stoffels | Darrell | | 36884-013 |
| Strzalka | Casimir | | 58065-066 |
| Teesateskie Jr. | Lloyd | | 22249-058 |
| Tetterton | Terry | | 56997-083 |
| Thomas | Anthony | | 04585-028 |
| Thomas | Nathaniel | | Released |
| Thompson | Rudo | | 29495-013 |
| Trimm | Ronald | | 11633-055 |
| Valdez | David | | 29389-177 |
| Valdez | Guadalupe | | 40569-079 |
| Valdez | Delisa | M. | 29391-177 |

| Valdez | Christopher | G. | 29390-177 |
|---|---|---|---|
| Velazquez | Edward | R. | 40433-424 |
| Walker | Michael | | 11558-041 |
| Warner | Eugene | | 13354-006 |
| Watson | Barry | | 05265-010 |
| Wheat | William | | 09728-033 |
| Williams | Edward | J. | 56839-004 |
| Willis | David | | 21465-058 |
| Wilson | Tyree | | 26276-018 |
| Wooten | Gerald | | 09457-051 |
| Yaser | Salem | | 31557-160 |